48 P.3d 651

Stacie CARNELL, as parent of the minor child Cambria Carnell, and on behalf of the Estate of Cambria Carnell, Morgan McCarthy, individually and Stacie Carnell, as guardian of Morgan McCarthy, Plaintiffs–Appellants–Cross–Respondents,

v.

BARKER MANAGEMENT, INC., d/b/a Barker Realtors and James Barker, individually; Ralph E. Smith and Betty L. Smith, husband and wife; Phillips Electric, John Does I through X, Defendants–Respondents.

Jerry and Cindy Carnell, as the parents and personal representatives of the minor child Brittiny Carnell and Gerald Fred Carnell, a minor child, individually, and Jerry and Cindy Carnell as the parents and guardians of said child, Plaintiffs–Appellants–Cross–Respondents,

v.

James Barker, individually and Barker Management, Inc., dba Barker Realtors; Ralph E. Smith and Betty L. Smith, husband and wife; Phillips Electric and John and Jane Does I through X, Defendants Respondents,

and

State of Idaho, Department of Health and Welfare, Defendant–Respondent–Cross–Appellant.

No. 26575.

Supreme Court of Idaho, Boise, March 2002 Term.

June 3, 2002.

Jenkins Law Office, Chtd., Idaho Falls, for plaintiffs-appellants-cross respondents Stacie Carnell, Morgan McCarthy, and Jerry and Cindy Carnell.

Brassey, Wetherell, Crawford & McCurdy, Boise, for defendants-respondents Ralph E. Smith and Betty L. Smith.

Moore, Baskin & Parker, Boise, for defendants-respondents Barker Management, Inc., d/b/a Barker Realtors and James Barker.

Emery & Kershaw, P.C., Twin Falls, for defendant-respondent-cross appellant State of Idaho, Department of Health and Welfare.

Saetrum Law Offices, Boise, for defendant-respondent Phillips Electric.

KIDWELL, Justice.

Stacie Carnell and Morgan McCarthy and Jerry and Cindy Carnell filed separate com-

plaints for wrongful death and personal injury against numerous defendants following the deaths of two children and the injury of another child in a house fire. They appeal the district court's grant of summary judgment as to all defendants.

## I.

### FACTS AND PROCEDURAL BACKGROUND

This case stems from a house fire that resulted in the deaths of two children and personal injury to a third child. On May 13, 1996, LaDonna Seeley (Seeley) purchased a home in Buhl, Idaho from Ralph and Betty Smith (Smiths). Barker Realty was the Smiths' realty company; Jim Barker (Barker) was a realtor. Seeley moved into the home in mid-August with her daughter, Stacie Carnell (Stacie); Stacie's two children, Cambria Carnell (Cambria) and Morgan McCarthy (Morgan); Seeley's son, Jerry Carnell (Jerry); Jerry's four minor children, Lindsey, Lacey, Alissa, and Brittiny; and Seeley's son, Shane. On August 7, 1996, the Honorable Thomas H. Borreson granted the Idaho Department of Health and Welfare (IDHW) temporary custody of Lindsey, Lacey, Alissa, Brittiny, and Gerald (Jory) Carnell. Jerry and his wife, Cindy, were to have no contact with each other or the children. Because of his young age, Jory remained with Cindy, and the IDHW placed the other four children with their grandmother, Seeley.

The IDHW visited the Seeley home prior to placing the children there and performed a safety inspection of the home. Linda Kirk (Kirk), an IDHW employee, visited the Seeley home and observed that the basement had only one exit. Kirk informed Seeley that the children would require adult supervision any time they were in the basement.

After moving in, Seeley, the other residents of the home, and Cindy, a frequent visitor to the home, began to notice various electrical problems, such as blown fuses and occasional power outages. Seeley contacted Barker about fixing the problem; Seeley recalled Mrs. Smith telling her the home had updated wiring. In October of 1996, Barker solicited bids from electrical contractors to

make the necessary repairs at the home. The bid from Phillips Electric Company (Phillips Electric) was accepted, and Phillips Electric performed the repair work in November of 1996. Phillips Electric replaced the fuse box with a circuit breaker box, replaced some wiring to the water heater, and installed new groundings. Other than needing to reset the microwave clock on occasion, the home's occupants did not experience further electrical problems.

On December 18, 1996, a fire occurred in the Seeley home. Jerry left for work around 6:30 a.m. Cindy arrived with Jory that morning, joining Seeley, Stacie, Morgan, Cambria, Brittiny, Shane, and Jamie, Seeley's son who was visiting. Cindy placed Jory down for a nap in a bassinet behind a hide-a-bed in the basement. Cindy and Seeley were talking in the kitchen, and Stacie, on her way to the kitchen, observed Cambria and Brittiny go down to the basement. She did not mention to any of the adults that the children went to the basement. Approximately ten to twenty minutes later, three-year-old Alissa ran up the basement stairs yelling. As she opened the door at the top of the stairs onto the main floor of the house, the smoke detector on the main floor began alerting. The smoke detector in the basement, located behind the closed door of the furnace room, began alerting about the same time. Cindy heard Jory crying, ran downstairs, and saw the fire on and around the hide-a-bed and west wall. She grabbed Jory, who had been burned, and ran upstairs. She looked around the basement, but did not see anyone. Stacie limited her search of the home for the other children to the main floor. Cindy, Jory, Seeley, Alissa, Stacie, and then-newborn Morgan, all fled the home.

The Buhl Fire Department responded quickly. After extinguishing the fire, firemen found Cambria and Brittiny behind a wet bar in the basement. Both girls died as a result of the fire. Cambria was two years old, and Brittiny was two days shy of two years old. Jory suffered burns, and some of the adults were treated for smoke inhalation. Although the cause of the fire was in dispute, no one disputed that the fire began in the basement. Jerry lived in the basement;

Brittiny and another child usually slept in the basement; the basement doubled as the children's playroom. Jerry and Cindy smoked. Jerry admitted to smoking in the basement, and kept his lighter and cigarettes in a small box in the basement. When she visited, Cindy kept her cigarettes and lighter on a shelf in the basement.

The Buhl Fire Department requested that Donald D. Dillard, Chief Deputy State Fire Marshal, inspect the home to determine the cause and origin of the fire. He found a burned non-childproof lighter under the hide-a-bed suggesting it may have been used to start the fire. Alissa was questioned about the fire by her family only. She allegedly said that she did not know how the fire started.

On June 30, 1997, Jerry and Cindy filed a complaint for the wrongful death of Brittiny and the personal injuries suffered by Jory. Their complaint was based upon the theory that the cause of the fire was electrical. Their complaint named Seeley, Barker, Barker Realty, the Smiths, Phillips Electric, and the IDHW as defendants. Stacie and Morgan filed a complaint for the wrongful death of Cambria. It was originally filed on May 21, 1997, but was not served. It was amended and filed again on October 15, 1997. Seeley, Barker, Barker Realty, the Smiths, and Phillips Electric were named as defendants. The plaintiffs alleged that the negligent actions of the defendants resulted in the deaths of two children and personal injuries to one child and sought damages for wrongful death and personal injuries. Specifically, they alleged that Seeley negligently failed to make her home safe, that the Smiths, Barker, and Barker Realty negligently failed to disclose the electrical defects in the home and falsely represented that the wiring in the home was updated, and that Phillips Electric negligently repaired the electrical wiring in the Seeley home. Jerry and Cindy's complaint also alleged that the IDHW negligently placed Brittiny in an unsafe home.

The two complaints were consolidated on January 5, 1998. The parties spent the latter part of 1997 and all of 1998 answering the complaints and beginning discovery. The IDHW filed a motion for summary judgment, which the district court granted in part and denied in part in an order dated December 31, 1998. Its motion to reconsider or clarify the decision was denied by the court on April 28, 1999. On February 24, 1999, a scheduling order was entered, requiring the plaintiffs to disclose all expert witnesses 180 days prior to trial, set for June 5, 2000. All of the defendants filed motions for summary judgment in the spring of 1999. Plaintiffs requested and were granted an extension of time to respond to the motions.

In support of its motion for summary judgment, Phillips Electric submitted the affidavits of Dillard and Shane Hartgrove (Hartgrove), a fire inspector and a member of the Boise Police Department. Both men investigated the cause and origin of the fire at the Seeley home—Dillard at the request of the Buhl Fire Department and Hartgrove at the request of Phillips Electric. They each determined the cause of the fire to be a lighter, which was used to set fire to the bedding of the hide-a-bed. They both excluded electrical problems as the cause of the fire. In their affidavits, both men gave detailed information about their education, experience, and training as fire inspectors, provided specific cases in which they had testified as experts, explained the methodology they used to determine the cause and origin of the fire, and explained how they were able to conclude that the fire was caused by the lighting on fire of the bedding of the hide-a-bed, not by electrical causes.

During this litigation, counsel for Seeley retained Ted Itchon (Itchon), an expert fire investigator, as a consultant. As part of his investigation, Itchon had removed various pieces of evidence from the basement after the fire. Plaintiffs sought to have that evidence examined by an expert from California whom they had retained. The district court ordered the evidence to be shipped to California for examination. The evidence was returned, but the California expert's opinion or findings were never filed. A summary judgment hearing on all issues except causation was scheduled for August 30, 1999. On August 6, 1999, counsel for Jerry and Cindy, and counsel for Stacie and Morgan were granted leave to withdraw as plaintiffs' attor-

neys. Gordon Jenkins took over as counsel for all plaintiffs, and immediately moved for an extension of time to respond to the defendants' motions for summary judgment. The motion was granted. The summary judgment hearing as to all issues except causation was heard as scheduled on August 30, 1999.

Prior counsel had unsuccessfully attempted to seek the court's permission to depose Itchon on several occasions. On September 29, 1999, the district court granted plaintiffs' motion to depose Itchon, a non-witness expert. In support of their motion to depose Itchon, plaintiffs submitted the affidavit of George C. Bidstrup (Bidstrup), an electrician. Bidstrup stated that to determine the cause of the fire and render an opinion on the fire's origin, he needed to speak to the person who had removed crucial evidence from the situs of the fire. The district court based its decision on the fact that the other experts' affidavits made it clear that having an opportunity to inspect the home was vital to rendering an opinion; therefore, plaintiffs were entitled to speak with Itchon, who had inspected the home and removed evidence from the fire situs. After finally succeeding in their efforts to depose Itchon, the plaintiffs never deposed him, and never even contacted Seeley's counsel to arrange a meeting with Itchon.

On October 20, 1999, the district court issued an order regarding defendants' motions for summary judgment as to all issues except causation. The court granted summary judgment for Seeley as to all claims, and granted summary judgment as to the other defendants for claims that lacked foundation in law, such as those for negligent and intentional misrepresentation, pain and suffering claims by the Estates of Cambria Carnell and Brittiny Carnell, and for the wrongful death claims of Morgan McCarthy. The court denied summary judgment as to all other claims because the cause of the fire would impact them. In an order dated November 8, 1999, the court also dismissed the wrongful death claims of Morgan McCarthy against Phillips Electric.

On November 16, 1999, Phillips Electric renewed its motion for summary judgment as to the issue of causation. The other defendants quickly followed suit. A hearing was calendared, rescheduled twice, and finally set for March 20, 2000. On March 9, 2000, plaintiffs submitted a second affidavit of Bidstrup in opposition to the motions for summary judgment. Phillips Electric filed a motion to strike Bidstrup's second affidavit, and filed the second affidavit of Dillard in support of its motion. The Smiths joined in the motion to strike on March 16, 2000.

A summary judgment hearing as to causation was held on March 20, 2000. In an opinion dated April 6, 2000, the district court struck Bidstrup's second affidavit. The court found that plaintiffs had failed to disclose Bidstrup as an expert witness in violation of the court's scheduling order. The court also held that Bidstrup was not qualified as a fire cause and origin expert. The court found that Bidstrup's testimony was not based on "scientific, technical, or other specialized knowledge," and also found that his testimony would not assist the trier of fact. It struck the portions of Bidstrup's affidavits that were opinions as to questions of law. The district court granted summary judgment as to all defendants on the issue of causation. The court also addressed the Smiths', Barker's and Barker Realty's, and the plaintiffs' motions for reconsideration. The court granted summary judgment as to all issues to Barker and Barker Realty. The court denied the Smiths' and the plaintiffs' motions for reconsideration.

On May 1, 2000, the court denied plaintiffs' motion for reconsideration. Appellants filed a timely notice of appeal on May 26, 2000, and the IDHW filed a timely notice of cross appeal on June 9, 2000.

## II.

### STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court applies the same standard as used by the district court originally ruling on the motion. *Intermountain Forest Mgmt., Inc. v. Louisiana Pacific Corp.,* 136 Idaho 233, 235, 31 P.3d 921, 923 (2001) (citing *Wensman v. Farmers Ins. Co. of Idaho,* 134 Idaho 148, 151, 997 P.2d 609, 612 (2000)). Summary

judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Jacobson v. State Farm Mut. Auto. Ins. Co.*, 136 Idaho 171, 173, 30 P.3d 949, 951 (2001) (citations omitted). "I.R.C.P. 56(e) provides that the adverse party may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial." *Rhodehouse v. Stutts*, 125 Idaho 208, 211, 868 P.2d 1224, 1227 (1994) (citation omitted). Affidavits supporting or opposing the motion for summary judgment "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* "The admissibility of the evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold question to be answered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial." *West v. Sonke*, 132 Idaho 133, 138, 968 P.2d 228, 233 (1998). "Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Jensen v. Am. Suzuki Motor Corp.*, 136 Idaho 460, 463, 35 P.3d 776, 779 (2001).

## III.

### ANALYSIS

### A. The District Court Did Not Err By Striking Bidstrup's Second Affidavit.

■ Appellants argue that the district court erred by striking Bidstrup's second affidavit. Appellants assert that Idaho Rule of Evidence 702 mirrors F.R.E. 702, which has been construed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny; there have been countless federal opinions addressing the requirements of F.R.E. 702. Appellants cite to these cases for the premise that the preferred method of determining the admissibility of an affidavit is an evidentiary hearing, which the district court did not do in this case. Appellants believe this was an abuse of discretion. Appellants assert that Bidstrup was qualified, had reviewed the depositions in this case, photographs of the basement, and a video of the basement in formulating his opinion, and possessed scientific, technical, or other specialized knowledge in the field of fire cause and origin. Appellants argue that Bidstrup raised genuine issues of fact that should have been presented to a jury.

On reply, appellants contend that the respondents were aware of appellants' intention to use Bidstrup as an expert, so no prejudice resulted from untimely disclosure. According to the appellants, "a summary judgment motion should constitute good cause for altering a scheduling order, especially when a prior affidavit has been submitted by this same expert, thereby, apprising Defendants of Plaintiffs' intent to use him."

Idaho Rule of Evidence 104 in pertinent part states, "preliminary questions concerning the qualifications of a person to be a witness ... or the admissibility of evidence shall be determined by the court. . . ."

■ Idaho Rule of Evidence 702 states "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This Court has stated "that the appropriate test for measuring reliability of evidence in this state is I.R.E. 702." *State v. Merwin*, 131 Idaho 642, 646, 962 P.2d 1026, 1030 (1998) (citing *Walker v. Am. Cyanamid Co.*, 130 Idaho 824, 832, 948 P.2d 1123, 1131 (1997)). "The trial court's broad discretion in admitting evidence 'will only be disturbed on appeal when there has been a clear abuse of discretion.'" *Id.* In

*Merwin*, the defendant argued that the studies relied upon by the experts did not meet the standards set forth in *Daubert*. This Court rejected the proposed application of *Daubert* to expert witness testimony in Idaho in *Merwin*.

█ The district court was cognizant of the fact that this Court has not adopted *Daubert*, and conducted a bare analysis of Bidstrup's second affidavit under I.R.E. 104 and 702. In its decision, the court first addressed whether Bidstrup was qualified as a fire causation and origin expert. Citing the lack of information in his affidavit concerning his education, training, and experience in the area of fire investigation, coupled with no mention of how Bidstrup gained his knowledge in fire causation, the district court found that Bidstrup was "unqualified to testify as to the cause, place of origin, or spread of fire. . . ." The court next tried to determine if Bidstrup's testimony was based on "scientific, technical, or other specialized knowledge" as required by I.R.E. 702. The court found that other than the one sentence stating that fire burns towards fuel or oxygen, a common fact known by most lay people, there was no other explanation of the methodology Bidstrup used to determine the cause of the fire or exclude possible causes. The court also found that Bidstrup's testimony lacked factual foundation. Even though Bidstrup claimed to have reviewed the depositions in the case, his conclusions contradicted the testimony given in those depositions. The court also noted that much of Bidstrup's affidavit was nothing more than conclusions as to questions of law. Witnesses are not allowed to give opinions on questions of law; thus, the district court properly found that those conclusions were not admissible.

The district court properly struck Bidstrup's second affidavit, because it did not meet the threshold question of admissibility. The appellants are incorrect in their assertion that they are entitled to every inference *before* the question of admissibility is answered. The district court properly conducted a thorough examination of Bidstrup's second affidavit under I.R.E. 702, not *Daubert*. Under its analysis, the affidavit did not meet the requirements of I.R.E. 702.

Yet, all of this is immaterial because the appellants never disclosed Bidstrup as an expert witness, in violation of the district court's scheduling order. The court gave appellants time extensions to obtain expert testimony, ordered physical evidence removed from the fire situs to be given to appellants for their California expert to analyze, and granted appellants permission to depose Itchon, a non-witness expert. In spite of these numerous opportunities, appellants never disclosed any expert witnesses. Even after the defendants filed motions for summary judgment, arguing that Bidstrup had not been disclosed as an expert witness, and filed motions to strike Bidstrup's second affidavit for lack of qualification and improper rendering of opinions on questions of law, appellants made no effort to remedy the situation. Citing I.R.C.P. 26(b)(4), the district court did not allow Bidstrup's testimony in the form of his second affidavit.

The district court's decision striking Bidstrup's second affidavit is affirmed.

### B. The District Court Did Not Err By Granting Defendants' Motions For Summary Judgment.

█ Appellants contend that the district court erred in granting the defendants' motions for summary judgment. The appellants state that they deserve the benefit of every inference. They argue that a jury, not the court, should weigh the evidence and resolve the question of whether the fire was caused electrically or by children playing with a lighter.

Based on the record before it, the district court properly granted summary judgment to all defendants. After striking Bidstrup's second affidavit, the only evidence before the court consisted of the affidavits of Dillard and Hartgrove. Both men dismissed electrical problems as the cause of the fire; they both found that the cause of the fire was a lighter, which was used to set the hide-a-bed on fire. Because the appellants had failed to establish that there was a genuine issue of material fact concerning the element of causation, an element upon which they would

bear the burden at trial, summary judgment was proper.

■ "The decision to extend time to supplement an affidavit is within the sound discretion of the trial court." *Rhodehouse,* 125 Idaho at 213, 868 P.2d at 1229 (citing I.R.C.P. 56(f); *Johnston v. Pascoe,* 100 Idaho 414, 418–19, 599 P.2d 985, 989–90 (1979)). "In determining whether a trial court abused its discretion this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Id.* (citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

The district court did not abuse its discretion by denying appellants' request for additional time. The motions for summary judgment were originally filed in the spring of 1999. The hearing on the motions as to the issue of causation was postponed indefinitely while other motions and issues were resolved. A hearing on the issue of causation was held on March 20, 2000. The appellants had ample notice of the hearing and knew what was required of them to survive the summary judgment motions. Appellants did not establish that a genuine issue of material fact existed. The grants of summary judgment are affirmed.

### C. The District Court Did Not Abuse Its Discretion By Granting Barker and Barker Realty's Motion For Reconsideration And By Denying Appellants' Motion For Reconsideration.

■ The appellants contend that the district court erred by denying their motion for reconsideration following the dismissal of their claims. Appellants requested an additional sixty days to find an alternative fire causation expert or to hold an evidentiary hearing on Bidstrup's testimony. The appellants also argue that the district court erred by granting Barker Realty's motion for reconsideration in its April 6, 2000, opinion.

Appellants believe Barker Realty had a statutory duty to investigate the property and statements made on the seller's disclosure form, and further argue that Barker Realty assumed such a duty by its actions.

■ "The decision to grant or deny a request for reconsideration generally rests in the sound discretion of the trial court." *Jordan v. Beeks,* 135 Idaho 586, 592, 21 P.3d 908, 914 (2001).

The district court did not abuse its discretion in denying appellants' motion for reconsideration. The court exercised reason in reaching its decision that the appellants had been given numerous opportunities to prepare their case. They were aware of the defendants' motions for summary judgment and motions to strike Bidstrup's second affidavit. They made no effort to request an extension of time before the hearing, nor did they address or correct the deficiencies in the affidavit. Instead, after the court issued its order, they requested a time extension to submit additional affidavits or retain another expert. The court found that the appellants had been given several opportunities to remedy the issues raised by the defendants in their motions. Based on the record before the district court, it did not abuse its discretion in denying appellants' motion for reconsideration.

■ The district court also did not abuse its discretion in granting Barker and Barker Realty's motion for reconsideration. It found that although there may be a duty upon an Idaho realtor to investigate and disclose known dangerous defects in the home, there was no evidence in the record to support the argument that Barker and Barker Realty had any knowledge of electrical problems in the home. Such a finding led the court to grant summary judgment as to all issues for Barker and Barker Realty. Its decision was not an abuse of discretion and was supported by the record.

### D. The IDHW's Cross Appeal Is Rendered Moot By This Court's Holding.

The IDHW filed a cross appeal arguing that the district court had applied incorrect

standards to the facts of this case. Our decision renders the IDHW's cross appeal moot.

### E. Barker, Barker Realty, and The Smiths Are Entitled to Attorney Fees Pursuant to I.C. § 12–121.

 Barker, Barker Realty, and the Smiths requested attorney fees on appeal pursuant to I.C. § 12–121. They contend that appellants did not present any maintainable argument that the district court erred in its decisions. Respondents cite to *Pass v. Kenny*, 118 Idaho 445, 797 P.2d 153 (Ct.App. 1990), for the precedent that attorney fees on appeal may be awarded when the appellants have presented no cogent challenge to the trial judge's exercise of discretion.

 "An award of attorney fees under I.C. § 12–121 is appropriate where the appeal is 'frivolous, unreasonable, or without foundation.' " *Albee v. Judy*, 136 Idaho 226, 231, 31 P.3d 248, 253 (2001) (citations omitted).

In the present case, appellants' arguments lack merit. The district court allowed appellants numerous opportunities to correct the deficiencies in their case. On appeal, appellants' arguments regarding Bidstrup's second affidavit lacked foundation and were based on U.S. Supreme Court cases that have not been adopted as the rule in Idaho, as well as a sampling of federal cases that were not controlling law. They also failed to address in their opening brief the fact that Bidstrup's second affidavit was stricken because appellants failed to disclose him as an expert witness within the time frame established by the district court's scheduling order.

This Court awards respondents Barker, Barker Realty, and the Smiths attorney fees on appeal pursuant to I.C. § 12–121. This Court finds that the IDHW's one-sentence request for attorney fees on appeal is insufficient under I.A.R. 41, and declines to award the IDHW attorney fees on appeal.

### IV.

### CONCLUSION

The evidence in the record establishes that the fire was not caused by faulty electrical wiring, but was caused by children playing with a lighter. The district court did not err in striking Bidstrup's second affidavit because he was not timely disclosed as an expert, and the affidavit did not meet the requirements of I.R.E. 104 and 702. Without Bidstrup's second affidavit before the district court, the grants of summary judgment as to all defendants were proper. The district court did not abuse its discretion by granting Barker and Barker Realty's motion for reconsideration or by denying appellants' motion for reconsideration. This Court's decision renders the IDHW's cross appeal moot. This Court affirms the district court's findings. Attorney fees on appeal are awarded to respondents Barker, Barker Realty, and the Smiths. Costs to all respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN concur.