69 P.3d 146

**Kenneth William QUINLAN, Petitioner–Appellant,**

v.

**IDAHO COMMISSION FOR PARDONS AND PAROLE, Respondent.**

No. 29122.

Supreme Court of Idaho, Boise, February 2003, Term.

April 29, 2003.

Kenneth W. Quinlan, Boise, pro se, for appellant.

· Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

TROUT, Chief Justice.

Kenneth W. Quinlan ("Quinlan"), acting *pro se*, appeals from an order of the magistrate court denying his request for appointed counsel and from a summary judgment order dismissing his petition for a writ of habeas corpus. This case raises two major issues: (1) whether there is a right to counsel in Idaho's habeas proceedings created by statute; and (2) whether revision of the guidelines for parole reconsideration, eliminating mandatory hearings, constitutes an *Ex Post Facto* Clause violation.[1]

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Quinlan is serving an indeterminate life sentence following his 1973 conviction for second degree murder. He was paroled in 1985. Approximately four years later, Quinlan was arrested for driving under the influence while on parole. Continuation on parole was conditioned on Quinlan waiving his driving privileges. In March 1991, Quinlan's parole was revoked for missing prescribed alcoholics anonymous meetings, but he was reinstated on parole in December 1991. Parole was revoked in 1994 for several reasons, including Quinlan's violation of the prohibition against driving. Following the second parole revocation, the Idaho Commission for Pardons and Parole ("Parole Commission") "passed" Quinlan to his full term release date, i.e., they declined to schedule any future parole reconsideration hearing.

The matter of scheduling reconsideration hearings is committed to the discretion of the Parole Commission by Idaho Code § 20-223(c), which provides: "The Commission may also by its rules, policies or procedures fix the times and conditions under which any application denied may be reconsidered." At the time of Quinlan's crime and conviction, the Parole Commission's rules required a parole reconsideration hearing no less frequently than every thirty months. That rule was rescinded in 1987, however, and the rescission left the Parole Commission with no requirement for reconsideration hearings.

In May 1998, Quinlan filed in the magistrate division of the district court a petition for writ of habeas corpus asserting several claims. Among his claims, Quinlan alleged that the revocation of his parole had been improper because it was based on the violation of an unreasonable parole condition—that he not drive. Quinlan also alleged that, as applied to him, the rule rescission eliminating the requirement of parole reconsideration hearings was a violation of the *Ex Post Facto* Clause of the United States Constitution. Quinlan then filed a motion for appointment of counsel to represent him in the habeas corpus action. The Parole Commission moved for summary judgment. The magistrate judge denied Quinlan's request for appointed counsel and thereafter denied habeas relief.

Quinlan appealed to the district court. The district court upheld the summary judgment decision, holding that the magistrate judge had committed a procedural error in denying Quinlan's request for counsel, but that such error was harmless. On further appeal, the Court of Appeals reversed the district court, concluding it was error to refuse to appoint counsel for Quinlan's habeas corpus action. The Court of Appeals also found the lower courts had made analytical errors regarding Quinlan's *ex post facto* claim, and consequently remanded the issue to the magistrate judge. The State filed a

---

1. Though he does not fully articulate it, Quinlan blends a separation of powers argument together with the *ex post facto* argument. The gist of Quinlan's argument on this point is more an observation that separation of powers may be violated; however, he does not cite authority for this claim, and therefore we will not consider it.

Petition for Review before this Court, which was granted.

## II.

## STANDARD OF REVIEW

Our review of this case is on two levels. First, we review the lower court's summary judgment decision regarding the statutory right to counsel. And second, we review the denial of Quinlan's petition for writ of habeas corpus.

■ Habeas proceedings are civil in nature, and generally the rules of civil procedure apply. *See* I.C. § 19–4208; *Lopez v. State,* 128 Idaho 826, 827, 919 P.2d 355, 356 (Ct.App.1996). When considering a ruling on a motion for summary judgment, this Court's standard of review is the same as that used by the trial court in ruling on the motion. *Barnes v. Barnes,* 135 Idaho 103, 105, 15 P.3d 816, 818 (2000). This Court must liberally construe the facts in favor of the nonmoving party and determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). In making this determination, all allegations of fact in the record, and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion. *Thomson v. City of Lewiston,* 137 Idaho 473, 476, 50 P.3d 488, 491 (2002). The burden of proving the absence of material facts is upon the moving party. *Id.* Once the moving party establishes the absence of a genuine issue, the burden shifts to the nonmoving party to show that a genuine issue of material fact on the challenged element of the claim does exist. The nonmoving party may not rest upon the mere allegations or denials contained in the pleadings, but must come forward and produce evidence by affidavits or as otherwise provided in the rules, to set forth specific facts showing that there is a genuine issue for trial. I.R.C.P. 56(e). Failure to do so will result in an order granting summary judgment.

■ For a case on review from the Court of Appeals, we review the trial court's decision directly, albeit serious consideration is given to the Court of Appeals decision.

*State v. Dana,* 137 Idaho 6, 8, 43 P.3d 765, 767 (2002). Similarly, when reviewing a district court decision made while that court was acting in its appellate capacity, this Court examines the magistrate's record independently with due regard for the district court's decision on the matter. *Application of Henry,* 127 Idaho 349, 350, 900 P.2d 1360, 1361 (1995). This Court exercises free review over constitutional questions. *Id.*

■ Finally, we examine whether the magistrate judge abused his discretion in dismissing Quinlan's petition for writ of habeas corpus. Whether to issue such a writ is a matter within the discretion of the trial court. *Johnson v. State,* 85 Idaho 123, 127, 376 P.2d 704, 706 (1962). When appealing from the denial of a petition for writ of habeas corpus, the petitioner has the burden of establishing error. *Hernandez v. State,* 100 Idaho 581, 602 P.2d 539 (1979). When reviewing an exercise of discretion in a habeas corpus proceeding, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Duvalt v. Sonnen,* 137 Idaho 548, 552, 50 P.3d 1043, 1047 (Ct.App. 2002). With those standards of review guiding us, we now turn to the substantive issues raised on appeal.

## III.

## DISCUSSION

Quinlan raises three issues on appeal. We hold that summary judgment was properly granted against Quinlan on the right to counsel and parole condition issues. We also affirm the denial of relief based on the *ex post facto* habeas claim.

### A. There is no mandatory statutory right to counsel in habeas corpus proceedings.

Quinlan contends that he was entitled to court-appointed counsel to defend against

summary judgment. Quinlan supports his contention by claiming that appointment of counsel in the habeas corpus proceeding is subject to the same standards that apply in Uniform Post–Conviction Procedure Act ("UPCPA") (I.C. §§ 19–4901—4911) cases. The Parole Commission contends that habeas corpus actions, which are civil in nature, are governed by the Habeas Corpus and Litigation Procedures Act (I.C. §§ 19–4201—4236), in which there is no requirement for mandatory appointment of counsel.

 While the Court of Appeals relied on *Brown v. State,* 135 Idaho 676, 23 P.3d 138 (2001), in finding that Quinlan was entitled to appointment of counsel, that case is not applicable. In *Brown,* a post-conviction case, this Court found the appointment of counsel in post-conviction cases to be governed by both I.C. §§ 19–4904 and 19–852. After *Brown,* I.C. § 19–853, was amended to make clear that appointment of counsel at public expense in post-conviction cases shall be in accordance with I.C. § 19–4904. Thus, I.C. § 19–852 no longer applies in post-conviction cases and appointment of counsel in those cases is governed only by I.C. § 19–4904.

Quinlan does not have a UPCPA statutory right to counsel in a habeas proceeding. The habeas statute is clear: "Habeas corpus shall not be used as a substitute for, or in addition to, a direct appeal of a criminal conviction or proceedings under Idaho criminal rule 35 or the *uniform post-conviction procedures act,* chapter 49, title 19, Idaho Code, and the statutes of limitations imposed therein." I.C. § 19–4203(4) (emphasis added). Quinlan cannot now seek appointment of counsel in a habeas proceeding and claim the benefit of the UPCPA's right to counsel provision.

 Quinlan argues that I.C. § 19–852 requires appointment of counsel in non-frivolous habeas cases. A habeas proceeding is a civil action. I.C. § 19–4208. By its own terms, I.C. § 19–852 applies only to criminal and commitment proceedings, not civil actions such as habeas proceedings. Habeas corpus is governed by its own statutory framework set forth in I.C. §§ 19–4201—4236, in which there is no requirement for mandatory appointment of counsel in habeas proceedings. Moreover, I.C. § 19–4224, provides that "[t]his chapter sets forth the *exclusive* procedures and remedies in habeas corpus actions." (Emphasis added). Therefore, I.C. § 19–852 does not apply to habeas corpus actions and there is no basis for appointment of counsel. Consequently, the magistrate judge was correct in denying Quinlan's request for counsel.

**B. There is no *Ex Post Facto* Clause violation where the Parole Commission's rule change did not alter the terms and conditions under which Quinlan was incarcerated.**

 Quinlan raises the issue of whether the change in parole reconsideration rules constitutes an *ex post facto* violation entitling him to habeas relief.[2] One function of the *Ex Post Facto* Clause is to bar laws which, by retroactive operation, increase the punishment for a crime after its commission. *Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Under Idaho law, the Parole Commission has been delegated the authority to establish the interval between proceedings to reconsider inmates for parole after initial denial. I.C. § 20–223(c). The issue here concerns an administrative rule change in the frequency of parole reconsideration hearings.

**1. The *Ex Post Facto* Clause**

At the time Quinlan was convicted of second-degree murder and placed in the custody of the state Board of Corrections in 1973, the Parole Commission had in effect a rule requiring parole consideration to be conducted no less frequently than every thirty months. *See Izatt v. State,* 104 Idaho 597, 599 n. 2, 661 P.2d 763, 765 n. 2 (1983) (setting forth former policy). In 1987, the Parole Commission, acting under its authority to "fix the times and conditions under which any application denied may be reconsidered," I.C. § 20–223(c), amended its rules by deleting the

2. Habeas corpus relief is available for constitutional violations involving parole. *See* I.C. § 19–4213 (making habeas relief applicable to parole revocation); I.C. § 19–4217 (outlining appropriate habeas relief available to prisoners).

thirty month requirement. Quinlan claims that as a result of the rule change, the lack of a requirement to ever again conduct parole reconsideration hearings after an inmate has been initially denied parole violates the constitutional prohibitions on *ex post facto* laws. *See* U.S. CONST. art. I, § 10, cl. 1; *see also Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (including in definition of *ex post facto* laws the infliction of greater punishment than the law prescribed for the crime when committed). Based on existing precedent, we consider the constitutionality of the Parole Commission rule change within the context of an *ex post facto* analysis.

### 2. Parole commission rules are "laws" for purposes of the *Ex Post Facto* Clause.

Because Quinlan has challenged the Parole Commission rules amendments only under the United States Constitution, rather than the Idaho Constitution, we will apply United States Supreme Court precedent to the issue of whether the *Ex Post Facto* Clause applies to parole rule changes.[3]

 In *Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), the United States Supreme Court subjected parole rule amendments to an *ex post facto* analysis. *Id.* at 250–257, 120 S.Ct. 1362. In *Garner,* the Supreme Court analyzed a change to Georgia's parole rules, made by the Georgia State Board of Pardons and Paroles, that lengthened the period between parole reconsideration hearings for a class of inmates. The rule in place at the time of the inmate's offense mandated reconsideration hearings every three years, but was amended to allow an eight-year lapse between hearings for inmates serving life sentences. The *Garner* decision indicates that retroactive application of such a rule change lengthening the period between parole reconsideration hearings could violate the *Ex Post Facto* Clause either facially or as applied. *Id.* at 255, 120 S.Ct. 1362. The *Garner* Court

found no facial invalidity in the Georgia rule amendment, however, stressing two factors: (1) the parole board retained discretion as to how frequently to set an inmate's date for reconsideration, and (2) the statute permitted expedited parole reviews to consider a change in circumstances or new information. *Id.* at 254, 120 S.Ct. 1362.

### 3. The "Sufficient Risk" Test

 Not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited. *California Dep't of Corrections v. Morales,* 514 U.S. 499, 508–09, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). The United States Supreme Court has announced the test for conducting an *ex post facto* analysis of parole reconsideration rules. The proper inquiry is whether the rule change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509, 115 S.Ct. 1597 (finding no *ex post facto* violation where California statute changed frequency of reconsideration for parole from every year to up to every three years for prisoners convicted of more than one homicide).[4]

In *Morales,* the amended California law did not violate the "sufficient risk" standard because it did not modify the statutory punishment imposed for any particular offenses. *Id.* at 507, 115 S.Ct. 1597. Nor did the amendment alter the standards for determining either the initial date for parole eligibility or an inmate's suitability for parole. *Id.* The California law vested the parole board with discretion to decrease the frequency with which it reconsidered parole, allowing a longer period until the next consideration if the board determined a low likelihood of release existed for an inmate. The change in the California law did not prohibit requests for earlier reconsideration based on a change of circumstances. The Supreme Court noted that "only the most speculative and attenuat-

---

**3.** The magistrate court held that there was no *ex post facto* violation because parole regulations are not "laws" within the meaning of the *Ex Post Facto* Clause. For the reasons discussed hereafter, the United States Supreme Court has rejected that approach.

**4.** In *Morales* there was no question whether a "law" was involved, because a statute—not a parole commission rule—was the subject of the change.

ed possibility" of increasing the severity of punishment does not violate the *Ex Post Facto* Clause. *Id.* at 509, 115 S.Ct. 1597.

In applying the "sufficient risk" test, the *Garner* Court indicated the analysis must take into account whether a rule change violates the *Ex Post Facto* Clause either facially or as applied. As noted above, a key factor in finding no facial invalidity in the Georgia rule change was the fact that the inmate retained the ability to request expedited reviews to consider a change in circumstances or new information. *Garner,* 529 U.S. at 254, 120 S.Ct. 1362. As for the "as applied" analysis, the gravamen of the analysis is the risk of increasing the inmate's own sentence. *Id.* at 255, 120 S.Ct. 1362. Relevant for this analysis is the parole board's policy statements and actual practices that reveal how the agency is exercising its discretion under the amended rule. *Id.* at 256, 120 S.Ct. 1362. The *Garner* Court remanded for the lower court's consideration of whether the rule amendment created a sufficient risk of increased punishment to the inmate. Whether there has been an *ex post facto* violation in Quinlan's case depends on the Parole Commission's rules and their application to Quinlan.

4. **The parole reconsideration rules as applied to Quinlan do not violate the *Ex Post Facto* Clause of the United States Constitution.**

▉ It is important to understand what has not changed under the Parole Commission's amendment to parole reconsideration rules. The amendment does not alter the standards for parole eligibility or the date of the initial parole hearing. The Parole Commission retains discretion to schedule reconsideration hearings. Moreover, the Idaho rules provide a mechanism—the Self–Initiated Progress Report ("SIPR")—by which inmates may seek reconsideration before their next scheduled parole hearing.[5] IDAPA 50.01.01, Section 500. The SIPR is available for review on an annual basis. IDAPA 50.01.01, Paragraph 500.01.d. Even with the elimination of a mandatory reconsideration

hearing, the Idaho rules retain many of the safeguards the *Garner* and *Morales* courts listed as important in overcoming an *ex post facto* challenge. *See Garner,* 529 U.S. at 254, 120 S.Ct. 1362 (noting review in response to changed circumstances is important in avoiding a sufficient risk of increased punishment); *Morales,* 514 U.S. at 512–13, 115 S.Ct. 1597 (finding no *ex post facto* violation when changed law did not prohibit requests for earlier reconsideration based on a change of circumstances). The question whether retroactive application of a particular change in a parole rule violates the *Ex Post Facto* Clause is "a matter of degree." *Garner,* 529 U.S. at 250, 120 S.Ct. 1362 (citation omitted). Understanding what has not changed reinforces our conclusion that Quinlan does not face a sufficient risk of increased punishment.

Quinlan has no right to parole. Quinlan's argument that the Parole Commission has exercised its discretion to change the way in which parole is considered is really no different than complaining that the Parole Commission failed to grant parole when Quinlan felt parole was warranted. It is not for Quinlan, nor for this Court, to exercise the Parole Commission's discretionary role of granting or denying parole. *See Malloroy v. State,* 91 Idaho 914, 915, 435 P.2d 254, 255 (1967) (stating parole in Idaho is not a matter of right or privilege, but instead is a matter of grace or clemency). The eligibility standards for parole are the same for Quinlan now as they were when he was originally incarcerated. All that has really changed is the procedure by which he is reviewed for parole eligibility. Quinlan has the ability to submit an SIPR on a yearly basis, thereby making his case for why he should be considered for parole. Contrary to Quinlan's assertions, the mere fact that reconsideration hearings are not scheduled in advance does not mean an inmate will never again be considered for parole. Moreover, pro forma reconsideration hearings—conducted solely because a rule calls for periodic review—does not guarantee an inmate any greater chance at receiving parole than does the inmate-

5. Since having his parole revoked, Quinlan has submitted two SIPR's seeking reinstatement of

parole. Both SIPR's have been denied without comment.

initiated review provided by the SIPR. In both cases, the Parole Commission exercises its discretion in determining who will be paroled. Even after the rule changes, the Parole Commission's discretion is the same and the standards for parole eligibility are the same. While there are indeed differences between the Idaho rule change and the changes in *Morales* and *Garner*, those differences do not create a sufficient risk of increased punishment in Idaho due to the rule change. Like *Morales* and *Garner*, the Idaho rule change leaves in place the same standards of eligibility for parole and an option for inmate-initiated review. Because Quinlan's punishment has not been changed, nor a harsher punishment inflicted, the *Ex Post Facto* Clause of the United States Constitution has not been violated. Accordingly, there is no genuine issue of material fact and summary judgment was proper as a matter of law. I.R.C.P. 56(c).

## C. The no-driving condition on Quinlan's parole was reasonable.

Finally, Quinlan claims the denial of all driving privileges was an unreasonable condition of parole. Conditions on an inmate's parole must be reasonable and aimed toward rehabilitation. *Mellinger v. Idaho Dept. of Corrections*, 114 Idaho 494, 501, 757 P.2d 1213, 1220 (Ct.App.1988) (citing case from California that in turn cites cases tracing this "reasonable" standard back to the Fourteenth Amendment constitutional protection against arbitrary and oppressive official action). The lower court held that denial of all driving privileges was a reasonable response to Quinlan's two DUI convictions. The magistrate judge was correct in determining that the condition was related to rehabilitating Quinlan's drinking and driving, and protecting the public by ensuring that no further offenses involving a motor vehicle would occur. Quinlan agreed to abide by the condition prior to being released on parole. The legislature has indicated that suspension of driving privileges is an appropriate response to drinking and driving. *See, e.g.,* I.C. §§ 18–8002, –8002A. We find that the no-driving condition was a reasonable response to Quinlan's behavior and affirm the magistrate judge's decision.

## IV.

## CONCLUSION

We hold that prison inmates do not have a statutory right of mandatory counsel in habeas corpus proceedings. We further hold that the Parole Commission's rule changes do not violate the *Ex Post Facto* Clause. Accordingly, we affirm the magistrate judge, and we agree with the lower court that the no-driving parole condition was reasonable.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, CONCUR.