85 P.3d 667

**SPRINKLER IRRIGATION COMPANY, INC., an Idaho corporation, d/b/a Sprinkler Irrigation Sales and Sprinkler Irrigation Company; and Idaho Farmway, Inc., an Idaho corporation, and such other parties and entities, Does I Thru X, holding an insurable interest or beneficial right to the subject matter in dispute, Plaintiffs–Appellants,**

v.

**JOHN DEERE INSURANCE COMPANY, INC., a foreign corporation doing business in Idaho, Defendant–Respondent.**

No. 28558.

Supreme Court of Idaho, Boise, December 2003 Term.

Feb. 11, 2004.

Vernon K. Smith Jr., Boise, argued for appellants.

Anderson, Julian & Hull, Boise, for respondent. Michael P. Stefanic II argued.

BURDICK, Justice.

## NATURE OF THE CASE

This case arises from a dispute between Sprinkler Irrigation Company ("Sprinkler"), Idaho Farmway, Inc. ("Idaho Farmway"), and their insurer, John Deere Insurance Company, Inc. ("John Deere"), as to the amount of money paid under an insurance contract following a fire at Sprinkler's place of business. Sprinkler and Idaho Farmway sued John Deere for breach of contract and for bad faith in the adjustment of their claim. This is an appeal from the district court's decision granting summary judgment to John Deere after striking Sprinkler's affidavits of Daniel P. Weitz and Donald Ferron.

## FACTUAL AND PROCEDURAL BACKGROUND

Sprinkler operated a sprinkler and irrigation retail sales and steel products business in Idaho. Sprinkler had two (2) locations: one in Nampa, the other in Weiser. Sprinkler's president and stockholder is Dan Weitz. On April 28, 1997, Sprinkler's Nampa place of business was seriously damaged by fire, which caused structural damage to the building, destruction of inventory, and interruption in the flow of business. The real property located at Sprinkler Nampa was owned, mortgaged, and leased to it by Idaho Farmway.

At the time of the fire, Sprinkler possessed an insurance policy with John Deere, effective January 1, 1997. Key Bank was named in the policy as a loss payee. Sprinkler and Idaho Farmway asserted three claims under the policy: (1) building coverage, (2) business interruption and extra expense, and (3) contents.

### A. Facts Relating to the Building Coverage Claim

John Deere began investigating the claims after the fire. In order to assess the damage caused by the fire, on May 1, 1997, a structural engineer inspected the premises and determined that the building was only partially damaged and that most of the structure was salvageable. However, the City of Nampa would not permit any repair or rebuilding of the structure unless it complied with setback requirements and the city's 100–year flood plain requirements.

Prior to discovering the City of Nampa's position, Sprinkler suggested the use of contractor, Hanson Rice Construction ("Hanson Rice"), to develop the cost of repairs for the structure. On June 9, 1997, John Deere advanced a $50,000 payment to the Insured under the building coverage. On June 20, 1997, Hanson Rice provided a proposal for repair of the structure in the amount of $194,646.00. Sprinkler also asked Wright Brothers to bid the project to completely demolish the building and relocate it to meet the zoning requirements. On June 20, 1997, Wright Brothers provided a bid in the amount of $276,938.00. This bid did not include $32,897.00 for the wooden mezzanine shelving, which would have brought the bid to $309,835.00. Nearly one month later, on July 21, 1997, Hanson Rice provided another bid in the amount of $361,462.00.

Since John Deere had never received information that Sprinkler elected to have the building rebuilt, John Deere calculated the actual cash value of the building using Hanson Rice's original repair proposal in the amount of $194,646.00. John Deere's independent adjuster, Bill Goodner of Intermountain Claims, applied a 37% depreciation factor to arrive at an actual cash value of the building of $122,627.00. After subtracting the advance of $50,000 and the $500.00 deductible, on August 6, 1997, John Deere paid Sprinkler $72,127.00, which was accepted.

### B. Facts Relating to the Business Interruption and Extra Expense Claim

John Deere began investigating the claims in cooperation with Sprinkler's accountant, Brian Nye. On May 4, 1997, Nye provided partial sales records to support Sprinkler's claim for business income loss. Because there was a discrepancy in the figures due to sales tax issues, additional records were needed. During the month of May, some additional records were provided, but they did not distinguish between Sprinkler's Weiser and Nampa locations or give details about the loss at the Nampa location.

On June 3, 1997, John Deere engaged Paul Sutphen of the accounting firm RGL Gallagher to assist in the assessment of business income due under the policy. Sutphen requested additional documentation from Nye to support Sprinkler's sales projections.

On or about June 26, 1997, John Deere advanced the sum of $25,000 to Sprinkler for partial business income loss, which was accepted. For the next few months, John Deere and Paul Sutphen continued working with Nye to determine Sprinkler's business interruption loss. On August 5, 1997, payment was made to Sprinkler in the amount of $9,357.00 for extra expenses incurred in transferring undamaged inventory to the Weiser location.

On October 17, 1997, Weitz, the accountants, and the independent adjuster met at Sprinkler's Weiser location to discuss business income and inventory issues. Sutphen calculated the eight-month business interruption loss for Sprinkler to be $47,246.00. The time period for business interruption was calculated from the date of the fire (the date of loss) through December, 1997 (the period of restoration), which was the projected period used in the contractors' bids to demolish and rebuild Sprinkler's building.

### C. Facts Relating to the Contents Claim

Bill Goodner retained R.D. Powers Company, Inc. ("R.D.Powers") (a professional salvage and appraisal firm) to assist in verifying Sprinkler's stock inventory for the contents claim. R.D. Powers' representative spent four days working with Dan Weitz to physically inventory the damaged stock. The R.D. Powers representative was not able to physically inventory several sections on the mezzanine level because the merchandise was so badly damaged by fire. The inventory had to be reconstructed from Sprinkler's records. At the time of this inventory, Sprinkler agreed that none of the equipment in the manufacturing area was damaged; and there was no damage to the IRSCO [1] inventory of bolts and fasteners. In August 1997, John Deere did pay $9,357.00 as an extra expense to transfer these and other parts to Sprinkler's Weiser location.

On April 29, 1997, Wendy Blevins from Sprinkler informed Bill Goodner that the last physical inventory for Sprinkler was performed on February 28, 1997, and totaled $92,521.18. She also indicated that the last IRSCO physical inventory was performed on March 7, 1997, and totaled $91,243.55. Later in June 1997, Sprinkler forwarded another inventory from its computer records totaling $217,468.63 for Sprinkler Nampa only. Dan Weitz explained the discrepancy in the amounts as the result of Blevins' lack of knowledge about the Nampa operation and incorrect information. Due to the discrepancy, John Deere's accountant, Paul Sutphen, was requested to assist in evaluating the inventory claim.

---

1. The named Insureds in the insurance policy were Sprinkler and Silver State Diversified, Inc. Silver State is a corporation owned by Daniel Weitz, Phil Weitz, and Dave Weitz. Silver State owned both Sprinkler and IRSCO Steel Company ("IRSCO").

On June 9, 1997, John Deere made a partial payment of $50,000 to Sprinkler, as an advance and partial payment on Sprinkler's contents claim, which was accepted.

For the next few months, Sutphen requested information from Sprinkler's accountant, for price testing certain items in the stock inventory. On October 17, 1997, Sutphen and Nye met at the Weiser facility. Nye agreed that the perpetual inventory that had been earlier provided in the approximate amount of $217,000 included both the Sprinkler inventory and the IRSCO inventory. Sprinkler's trial balance and tax records revealed the inventory had consistently been between $90,000 to $95,000. After the fire, Sprinkler transferred $11,632.00 worth of inventory to the Weiser facility. Nye and Sutphen agreed to deduct ten percent to accommodate inventory errors and $1,500 salvage value. The remaining stock value was $71,301.00. In addition, John Deere agreed to add $5,000 for an estimated computer repair and $13,426.02 for the actual cash value for items other than stock. The total contents loss paid to Sprinkler and accepted was $89,727.02.

As to all of the claims, on December 2, 1997, Bill Goodner sent a letter to Dan Weitz of Sprinkler in care of his counsel, and to Idaho Farmway, with enclosed worksheets regarding the calculation of losses under the various portions of the policy. Goodner inquired whether there was any additional information John Deere should consider in adjusting the loss and requested such information be forwarded as soon as possible. Although the time period had already expired, John Deere extended the time period for notification of intent to replace the building repair until March 1, 1998. John Deere wrote that if it did not hear anything by March 1, 1998, it would assume that Sprinkler accepted the payment amounts in full and had no further information for John Deere to consider.

No further information was ever provided by Sprinkler. Idaho Farmway did not timely notify John Deere of its intent to have the building replaced. All checks were cashed without objection, including the ones written to joint-payees, Sprinkler and Key Bank.

### D. Course of Proceedings

On April 28, 1999, Sprinkler and Idaho Farmway Inc. (hereinafter "Sprinkler") filed suit against John Deere for breach of contract and for bad faith. On May 25, 2001, John Deere filed its motion for summary judgment and motion to dismiss. On July 27, 2001, the district court struck the affidavit of Daniel Weitz because it was conclusory and failed to reference the attachments with any particularity, making it impossible to understand. The district court allowed Sprinkler four additional weeks to file a revised affidavit. On August 24, 2001, Sprinkler filed the "Further Affidavit" of Daniel Weitz. On December 19, 2001, John Deere filed its motion to strike the "Further Affidavit."

On February 19, 2002, the district court heard all of the outstanding motions. On March 27, 2002, the court issued its memorandum decision granting John Deere's motion to strike the affidavits of Weitz and Ferron and granting John Deere's motions for summary judgment and to dismiss. Sprinkler appealed.

### ISSUES ON APPEAL

1. Whether the lower court improperly granted John Deere's motion to strike the affidavits of Daniel P. Weitz and Donald Ferron?

2. Whether the lower court improperly granted John Deere's motion for summary judgment?

### STANDARD OF REVIEW

The standard of review is the same standard used by the district court ruling on the summary judgment motion. *Baker v. Sullivan*, 132 Idaho 746, 748, 979 P.2d 619, 621 (1999). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). All disputed facts are to be construed liberally in favor of the non-mov-

ing party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Thomson v. Idaho Ins. Agency, Inc.,* 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994). "I.R.C.P. 56(e) provides that the adverse party may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial." *Carnell v. Barker Mgmt., Inc.,* 137 Idaho 322, 327, 48 P.3d 651, 656 (2002) (citations omitted). "Affidavits supporting or opposing the motion for summary judgment 'shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' " *Id.* "The admissibility of the evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold question to be answered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial." *Id.* "Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.*

■ Evidentiary rulings shall be reviewed under an abuse of discretion standard. *Perry v. Magic Valley Reg'l. Med. Ctr.,* 134 Idaho 46, 50, 995 P.2d 816 (2000). Upon review to determine whether a trial court abused its discretion, this Court inquires: (1) whether it correctly perceived the issue as discretionary; (2) whether it acted within the boundaries of its discretion and consistently with applicable legal standards; and (3) whether it reached its decision by an exercise of reason. *Id; Swallow v. Emergency Med. of Idaho, P.A.,* 138 Idaho 589, 592, 67 P.3d 68, 71 (2003) (citing *State v. Merwin,* 131 Idaho 642, 962 P.2d 1026 (1998); *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

## I.

Sprinkler argues that Weitz' "Further Affidavit" should not have been stricken because it sets forth specific details with respect to the attached exhibits that purportedly support Weitz' statements in the affidavit. Sprinkler argues that the verified complaint, as a matter of law, should have been treated as an affidavit in opposition to John Deere's summary judgment motion. Sprinkler contends that the district court did not adequately explain its reasoning in striking both Weitz' "Further Affidavit" and that of Donald Ferron. Lastly, Sprinkler asserts that the district court abused its discretion in striking the affidavits by misapplying the relevant law and misinterpreting Rule 56(e), I.R.C.P.

John Deere asserts the Weitz affidavit is generalized and does not provide specifics about dates, times, or places, as to the various actions of John Deere, Bill Goodner or other agents. John Deere cites to the following examples, which we discuss in turn.

■ In paragraphs 3 and 4, Weitz' affidavit makes assertions on behalf of Idaho Farmway about the amount of loss sustained to the property that allegedly was not compensated by John Deere. Weitz, however, is not competent to testify as to any losses sustained by Idaho Farmway, because he is not a stockholder, director or officer of Idaho Farmway. Furthermore, the evidence establishes that Idaho Farmway was compensated for the actual cash value of $122,127.00 for the fire damage to the structure, without objection.

In paragraphs 5 and 6, Weitz' affidavit asserts hearsay and multiple hearsay regarding conversations with the agent who sold Sprinkler the John Deere policy. The actual insurance policy that identifies the nature, scope and conditions of coverage applicable to this casualty is the controlling contractual agreement between the parties.

In paragraphs 7, 8 and 9, Weitz' affidavit made unfounded and hearsay assertions regarding closing Sprinkler's operation due to the fire. The attachments to Weitz' Affidavit, specifically appendices 20–26, were submitted to substantiate the loss incurred by Sprinkler, but they do not support any loss

arising from the fire at Sprinkler's Nampa location:

Appendix 20, identifies some wage reports, but the wage reports neither specify the dates involved nor identify the employees—they relate to the Weiser operations, which were unaffected by the fire;

Appendix 21 sets forth phone bills for the Weiser operations, some occurring in 1998;

Appendix 23 contains Blue Cross billings for some unknown persons or coverage, and refer to Investment Recovery, Inc., which is not a named insured;

Appendix 24 consists of billings from Weiser Auto Parts for materials and supplies for the Weiser operations. Certain of the bills even predated the loss;

Appendix 25 contains a bill for yellow pages advertising or similar charges for the Weiser business operations; and

Appendix 26 contains various freight bills for paper, toner, or similar items used in the Weiser operations.

The Weitz affidavit, on pages 41–42, puts forth an unsupported list of alleged "actual losses of the business" which Sprinkler claimed were as a result of the fire. A number of these items, however, were never submitted as losses while the claim was under consideration; others were for property not destroyed or removed.

The entire Weitz affidavit is filled with rambling, nonspecific, inaccurate and unsupported statements. We agree with John Deere's characterizations of the numerous counts of speculation, unfounded facts, and hearsay statements. The last 19 pages contain nothing more than a rambling and incoherent diatribe by Weitz as to why he felt his business failed, speculation and unfounded exclamations of the liability of John Deere for such a collapse. There is no explanation for Weitz' contentions that the fire at Sprinkler's Nampa location had any impact on the Weiser operation.

The district court properly concluded that Weitz' affidavit degenerates into an argumentative diatribe against the defendant and often lacks the specificity required by Rule 56(e). It is intermittently generalized, conclusory, speculative and argumentative. The affidavit includes a significant number of factual assertions that would not be admissible in evidence, often lacking foundation by failing to show affirmatively that the affiant is competent to testify regarding the factual allegations.

■ The district court did not err in striking the Affidavit of Donald Ferron that was based significantly on the "Further Affidavit" of Daniel Weitz, which the court properly refused. Ferron was proffered as an expert, and his opinion was premised primarily upon the Weitz affidavit, which contained mostly hearsay, unfounded facts, and inadmissible evidence. Ferron never referenced either the insurance policy or the calculations made by Bill Goodner, Paul Sutphen, and other experts retained by John Deere to assess and evaluate the claims.

■ Weitz' argument that the verified complaint furnishes sufficient, material facts to rebut the summary judgment was not argued to the lower court and will not be heard upon appeal. *Schiewe v. Farwell,* 125 Idaho 46, 49, 867 P.2d 920, 923 (1993).

Therefore, this Court affirms the district court's decision to strike the "Further Affidavit" of Daniel Weitz and the affidavit of Donald Ferron.

## II.

■ Upon moving for summary judgment, the moving party must show the absence of a genuine issue of material fact. *Quinlan v. Idaho Comm'n for Pardons and Parole,* 138 Idaho 726, 729, 69 P.3d 146, 149 (2003). The burden then shifts to the nonmoving party to show that a genuine issue of material fact does exist. *Id.* The nonmoving party must come forward and produce evidence to set forth specific facts showing a genuine issue of material fact. *Id.* The nonmoving party must present more than speculation or a mere scintilla of evidence to create a genuine

issue. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991). Failure to do so will result in an order granting summary judgment. *Quinlan,* 138 Idaho at 729, 69 P.3d at 149.

This Court, having affirmed the decision of the district court to strike the "Further Affidavit" of Daniel Weitz and the affidavit of Donald Ferron, affirms the summary judgment in favor of John Deere because there are no genuine issues of material fact in dispute.

### ATTORNEY FEES AND SANCTIONS

■ John Deere requests an award of attorney fees on appeal pursuant to I.A.R. 41(a) and I.C. § 12–121. "Attorney fees are awardable if an appeal does no more than simply invite an appellate court to second-guess the trial court on conflicting evidence." *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 120, 794 P.2d 1389, 1393 (1990). Sprinkler has asked this Court to re-evaluate the evidence or second-guess the trial court's findings. Sprinkler has presented no substantial legal argument. The Court finds this was a frivolous appeal.

■ On January 24, 2003, Vernon K. Smith Jr. was reminded by the Idaho Supreme Court and the Idaho Court of Appeals to comply with Idaho Appellate Rule 35(a)(6), which requires that the argument section of an appellant's brief "shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes, and parts of the transcript and record relied upon." Attorney Smith filed the Appellant's Opening Brief on March 12, 2003. The statement of facts and argument are virtually void of any citation to the transcript and record relied upon. Attorney Smith cursorily refers the Court to the "Further Affidavit" of Daniel Weitz, which is a document that was made into an exhibit due to the volume of it. The exhibit contains 55 pages of narrative plus nearly nine inches of attached appendices. Attorney Smith never refers the Court to the exact page or appendix in either his fact section or the argument section. Additionally, attorney Smith could never point to any provision of the insurance contract which supported his or Sprinkler's position, although asked repeatedly during oral argument to do so. Attorney Smith failed to conduct a reasonable inquiry that the appeal be well grounded in fact and warranted by existing law as required by Idaho Appellate Rule 11.1. On its own motion, an appellate court may award fees and costs against both the party and the party's attorney who have violated this rule. I.A.R. 11.1; *MacLeod v. Reed,* 126 Idaho 669, 671, 889 P.2d 103, 105 (Ct.App.1995). The Court sanctions attorney Smith by requiring him to pay the attorney fees and costs jointly and severally with Sprinkler.

### CONCLUSION

The Court affirms the district court's discretionary decision to strike the affidavits of Daniel P. Weitz and Donald Ferron. The Court affirms summary judgment in favor of John Deere.

The Court awards attorney fees and costs to John Deere under I.C. § 12–121, and as a sanction against attorney Smith pursuant to I.A.R. 11.1. The attorney fees and costs awarded in this appeal are to be paid jointly and severally by Sprinkler and attorney Smith.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.