102 P.3d 1108

**Jaimi D. CHARBONEAU,
Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 29042.**

Supreme Court of Idaho,
Boise, February 2004 Term.

Nov. 23, 2004.

Greg S. Silvey, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General, and Ralph R. Blount, Boise, for respondent.

TROUT, Justice.

Appellant, Jaimi D. Charboneau, filed a third petition for post conviction relief (Petition), along with several accompanying motions, subpoenas, memoranda and affidavits, seeking post conviction relief from his first-degree murder conviction. Upon a motion by the State for summary disposition of the Petition, the district court dismissed the Petition without further hearing. The judgment of the district court dismissing the Petition is reversed and the case remanded to the trial court for proper determination of Charboneau's entitlement to appointment of counsel when seeking post conviction relief.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Charboneau was convicted of first-degree murder on May 2, 1985, and was sentenced to death. This Court reviewed Charboneau's death sentence and remanded the case to the district court where the sentence was reduced to life in prison. For a comprehensive discussion of the facts leading up to Charboneau's murder conviction see *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989). Charboneau has previously filed a motion under Idaho Criminal Rule 35, two petitions for post conviction relief and two appeals.

On May 23, 2002, Charboneau filed his third petition seeking post conviction relief. He also filed a motion requesting the district court take judicial notice of his prior proceedings, as well as a motion for appointment of counsel. Lastly, Charboneau made a request for issuance of subpoenas and for discovery. Charboneau supported his Petition and other various motions with additional affidavits of witnesses and of himself.

Charboneau's Petition is comprised of two primary allegations. First, he asserts that various witnesses have come forward and provided new evidence in his case supporting a *Brady* violation (*see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)); that is, that the State hid and withheld exculpatory evidence relevant to his guilt or punishment. Second, Charboneau claims he received ineffective assistance of counsel for various reasons, including a failure to investigate the above-referenced witnesses.

Generally, Charboneau describes the following items of new evidence. There is a letter from former Jerome County Sheriff Larry Gold stating his suspicion of a conspiracy or "collaboration of minds" that manipulated the facts against Charboneau, although Gold had no proof. Gold also advised Charboneau's mother, Betsy Charboneau Crabtree, to find a former Jerome County sheriff's deputy named Mito Alonzo. Alonzo allegedly admitted in a taped statement to Tina Venable (the tape recording is not part of this record, but the statement was later admitted to Crabtree) that a cache of physical evidence had been removed from the crime scene and hidden, including a second gun recovered at the scene.

Charboneau also stated that the victim's daughter, Tira Arbaugh, who later married Charboneau's younger brother, Jimmy Griggs, had ultimately confessed to Griggs and Crabtree that she had been directed by the prosecution to remain silent regarding various things, including the other guns involved in the shooting, and to say that the only gun she could remember seeing that day was the .22 rifle. While Arbaugh was apparently willing to testify to these matters, she recently died from a severe asthma attack.

Charboneau produced a number of additional affidavits, including those of Charboneau's uncle and aunt, Theodore and Shirley Johnston, stating that they saw Charboneau and the deceased victim a few days before the shooting and that they seemed happy, but no attorney ever contacted them. Charbonneau produced other information in support of his Petition which is not relevant to the resolution of this appeal.

The State filed a response seeking summary disposition of Charboneau's Petition to which Charboneau responded. The district judge granted the State's motion determining that "[a] careful review of the record in this case indicates that defendant's third Petition for Post Conviction Relief is: 1) untimely, 2) consists of issues which have all been previously fully adjudicated more than once; and 3) that the "new evidence" is neither new nor admissible evidence." Charboneau asks this Court to reverse the district judge's decision dismissing his Petition and to remand this for an evidentiary hearing.

## II.

## STANDARD OF REVIEW

This Court's review of a district judge's construction and application of a statute, the Uniform Post Conviction Procedure Act (UPCPA), is a matter of free review. *Evensiosky v. State*, 136 Idaho 189, 190, 30 P.3d 967, 968 (2001). A petition for post

conviction relief is a civil action allowed by the authority of the UPCPA. *Id.; Rhoades v. State,* 135 Idaho 299, 300, 17 P.3d 243, 245 (2000). "The provisions of the UPCPA govern all post-conviction claims that do not involve the death sentence." *McKinney v. State,* 133 Idaho 695, 705, 992 P.2d 144, 154 (1999).

■ Summary dismissal of a petition for post conviction relief is the procedural equivalent of summary judgment under I.R.C.P. 56 and this Court must determine whether a genuine issue of material fact exists, with inferences liberally construed in favor of the petitioner. *Id.; Saykhamchone v. State,* 127 Idaho 319, 321, 900 P.2d 795, 797 (1995). Essentially, the task of this Court "is to determine whether the appellant has alleged facts in his petition that if true, would entitle him to relief." *Stuart v. State,* 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990).

■ In reviewing the denial of a motion for appointment of counsel in post conviction proceedings, "[t]his Court will not set aside the trial court's findings of fact unless they are clearly erroneous. As to questions of law, this Court exercises free review." *Brown v. State,* 135 Idaho 676, 678, 23 P.3d 138, 140 (2001).

### III.

### ANALYSIS

**A. The District Judge Erred in Failing to Rule on Charboneau's Motion for Appointment of Counsel Prior to Deciding the Case on the Merits.**

■ The district judge summarily dismissed Charboneau's Petition by determining that Charboneau's proffer of "new evidence" was neither new nor admissible evidence to justify a post conviction evidentiary hearing. However, the district judge failed to rule on

Charboneau's request for appointment of counsel prior to deciding the substantive issues contained in the Petition. A request for appointment of counsel in a post conviction proceeding is governed by Idaho Code § 19–4904, which provides that in proceedings under the UPCPA, a court-appointed attorney "may be made available" to an applicant who is unable to pay the costs of representation.

■ The decision to grant or deny a request for court-appointed counsel lies within the discretion of the district court. *Fox v. State,* 129 Idaho 881, 934 P.2d 947(Ct.App.1997). The Court of Appeals has ruled that when a district court is "... presented with a request for appointed counsel, the court must address this request before ruling on the substantive issues in the case." *Id. See also Ortiz v. State,* 124 Idaho 67, 856 P.2d 104 (Ct.App.1993); *Henderson v. State,* 123 Idaho 51, 844 P.2d 33 (Ct.App.1992). This Court observed in *Brown v. State,* 135 Idaho 676, 23 P.3d 138 (2001) [1] that

As stated above, a needy applicant for post-conviction relief is entitled to court-appointed counsel unless the trial court determines that the post-conviction proceeding is frivolous. Idaho Code § 19–852(b)(3) sets forth the standard for determining whether or not a post-conviction proceeding is frivolous. It is frivolous if it is "not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense." When applying that standard to *pro se* applications for appointment of counsel, the trial court should keep in mind that petitions and affidavits filed by a *pro se* petitioner will often be conclusory and incomplete. Although facts sufficient to state a claim may not be alleged because they do not exist, they also may not be alleged because the *pro se* petitioner simply does not know what are the essential elements of a claim.

---

1. Subsequent to the decision in *Brown,* this Court issued a decision in *Quinlan v. Idaho Comm'n for Pardons and Parole,* 138 Idaho 726, 69 P.3d 146 (2003). While *Quinlan* was a habeas corpus proceeding, the appellant argued that the same standards for appointing counsel should apply as in post conviction proceedings, citing *Brown* and I.C. § 19–852. We noted that after *Brown* the legislature amended I.C. § 19–

853 to provide that it no longer applied to post conviction proceedings and, thus, to that extent the statement in *Brown* applying I.C. 19–852 to post conviction proceedings is no longer the law and those standards do not apply. Thus, in *Quinlan,* I.C. § 19–852 had no application to a habeas proceeding either. The remainder of *Brown* continues to be applicable.

It is essential that the petitioner be given adequate notice of the claimed defects so he has an opportunity to respond and to give the trial court an adequate basis for deciding the need for counsel based upon the merits of the claims. If the court decides that the claims in the petition are frivolous, the court should provide sufficient information regarding the basis for its ruling to enable the petitioner to supplement the request with the necessary additional facts, if they exist. Although the petitioner is not entitled to have counsel appointed in order to search the record for possible nonfrivolous claims, he should be provided with a meaningful opportunity to supplement the record and to renew his request for court-appointed counsel prior to the dismissal of his petition where, as here, he has alleged facts supporting some elements of a valid claim.

135 Idaho at 679, 23 P.3d at 141.

 Here, the district judge should have first determined whether Charboneau was entitled to court-appointed counsel before denying the post-conviction relief on its merits. Based upon our decision in *Quinlan v. Idaho Comm'n for Pardons and Parole*, 138 Idaho 726, 69 P.3d 146 (2003), it is clear that the standards imposed by I.C. § 19–852 are no longer applicable to the court's determination of entitlement to counsel in a post conviction proceeding. For the purposes of I.C. 19–4904, the trial court should determine if the petitioner is able to afford counsel and whether this is a situation in which counsel should be appointed to assist the petitioner. In doing that analysis, the trial court should keep in mind the admonition set forth in *Brown* about the typical problems with *pro se* pleadings. Therefore, in giving notice of intent to deny the Petition, "the court should provide sufficient information regarding the basis for its ruling to enable the petitioner to supplement the request with the necessary additional facts, if they exist." *Id.* If he alleges facts to raise the possibility of a valid claim, the district court should appoint counsel in order to give the petitioner an opportunity with counsel to properly allege the necessary supporting facts.

In *Saykhamchone v. State, supra,* this Court set forth the standard of review relevant to summary dismissal of a post conviction petition, as follows:

In determining whether a motion for summary disposition is properly granted, a court must review the facts in a light most favorable to the petitioner, and determine whether they would entitle petitioner to relief if accepted as true. A court is required to accept the petitioner's unrebutted allegations as true, but need not accept the petitioners conclusions. The standard to be applied to a trial court's determination that no material issue of fact exists is the same type of determination as in a summary judgment proceeding. (citations omitted throughout).

127 Idaho at 321, 900 P.2d at 797.

In his Petition, Charboneau alleged that new evidence was available in his case that would support a claim of a *Brady* violation, and that he also received ineffective assistance of counsel. While the ineffective assistance of counsel claim could be described as frivolous, Charboneau's other claim appears at least to raise disputed issues of fact. For instance, Charboneau disclosed the existence of the Alonzo tape, indicated that it was in the possession of Tina Venable and requested the issuance of a subpoena to obtain the tape. This course of proceeding appears to comply with the provision of I.C. § 19–4903 that "[a]ffidavits, records, or other evidence supporting its allegations shall be attached to the application or the application shall recite why they are not attached." If the Alonzo tape exists, Charboneau may have a valid *Brady* claim. Although the facts alleged do not fully establish the existence of such a claim, they do at least raise that possibility. It is unlikely that Charboneau could properly raise a valid *Brady* claim and determine how to procure admissible evidence establishing all the elements of such a claim without the assistance of counsel.

By not specifically addressing the appointment of counsel issue before dealing with the substantive issues of Charboneau's Petition, the district court abused its discretion. While clearly the standard permits the trial court to determine whether the facts alleged

are such that they justify the appointment of counsel, in determining whether to do so, every inference must run in the petitioner's favor where the petitioner is unrepresented at that time and cannot be expected to know how to properly allege the necessary facts. At a minimum, the trial court must carefully consider the request for counsel, before reaching a decision on the substantive merits of the petition and whether it contains new and admissible evidence. Therefore, we vacate the dismissal of Charboneau's Petition for post conviction relief because if, on remand, the district court decides to appoint counsel for Charboneau, that counsel may file an amended petition and/or additional affidavits alleging facts based on admissible evidence sufficient to avoid summary dismissal.

### B. The State is Not Entitled to its Costs on Appeal

The State seeks costs pursuant to Idaho Appellate Rule 40 which permits the award of costs on appeal to the prevailing party. Because the State is not the prevailing party, there is no entitlement to costs on appeal.

### IV.

### CONCLUSION

We vacate the order summarily dismissing Charboneau's Petition and remand this case for further proceedings consistent with this decision.

Justice Pro Tem SCHILLING and Justice Pro Tem JUDD concur.

Justice KIDWELL dissenting.

I respectfully dissent from the majority opinion and would uphold the district court's dismissal of the petition.

### A. The District Court Did Not Err By Granting The State's Motion For Summary Dismissal Because Charboneau's Petition Was Based Upon Evidence That Was Not Admissible And Admissible Evidence Which Did Not Support Post–Conviction Relief.

In dismissing the petition, the district court determined Charboneau's "new evi-

dence" is neither new nor admissible evidence. "To justify a post-conviction evidentiary hearing, the petitioner must make a factual showing based on admissible evidence. The application must be supported by written statements from competent witnesses or other verifiable information." *McKinney v. State,* 133 Idaho 695, 700, 992 P.2d 144, 149 (1999) (citation omitted). Under the hearsay rule, "[h]earsay is not admissible except as provided by [the Idaho Rules of Evidence] or other rules promulgated by the Idaho Supreme Court." I.R.E. 802; *Rowan v. Riley,* 139 Idaho 49, 54, 72 P.3d 889, 894 (2003). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801; *Rowan,* 139 Idaho at 54, 72 P.3d at 894. Summary dismissal is proper and an evidentiary hearing is not required if only unsubstantiated, and conclusory allegations are raised in the petition. *McKinney,* 133 Idaho at 700, 992 P.2d at 149; *Nguyen v. State,* 126 Idaho 494, 497, 887 P.2d 39, 42 (Ct.App. 1994). The supporting affidavits must contain verifiable information. *Nguyen,* 126 Idaho at 497, 887 P.2d at 42. Moreover, the facts alleged in the petition, even if true, must justify a grant of relief to the petitioner. *Stuart v. State,* 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990).

Charboneau supports his petition with a number of affidavits. However, the relevant parts of the affidavits that contain potentially exculpatory evidence that might justify a grant of relief by this Court are inadmissible as hearsay. For example, Crabtree attests that "Tira [the deceased's daughter and wife of Charboneau's brother] told me that the tragedy which took the life of her mother on July 1st, 1984, did not happen the way it was played out in court ... [and the prosecutors] did instruct her on what they wanted her to say regarding the events which took place on July 1st." This information is inadmissible because Crabtree testified, "tragically, Tira passed away recently due to a severe asthma attack before she had a chance to testify." Generally, statements made by a person who later from becomes deceased are inadmissi-

ble unless they are declarations made in the belief of impending death. *See* I.R.E. 804(b)(2); *Blaine County Inv. Co. v. Mays*, 49 Idaho 766, 291 P. 1055 (1930); *State v. Barber*, 13 Idaho 65, 88 P. 418 (1907). Additionally, without more, such as a sworn statement from Tira Arbaugh, the allegations are unsubstantiated, unverifiable and conclusory. These statements are insufficient to support a petition for post-conviction relief.

Crabtree also supplies information that allegedly came from a former sheriff deputy, Alonzo. This information would not be admissible because it is relayed through a third person and constitutes hearsay. Additionally, the information does not relate directly to Charboneau's case. Crabtree states that Tina Venable met with Alonzo and recorded what he said. Crabtree states she "played the tape and it was full of information. [Alonzo] could give us a wealth of information of the hidden evidence and corruption with the Jerome County Sheriffs Department.... [Alonzo] told me both times that he would not get involved with any of this because he's not going to jeopardize his career and plus he was worried about his family." Neither the tape-recorded conversation nor a sworn statement from Alonzo is part of the record. The statements attributed to Alonzo are hearsay and, without more, the information is unsubstantiated, unverifiable and conclusory. These statements are also insufficient to support a petition for post-conviction relief.

Charboneau presents a letter from former Sheriff Gold which states "[t]here also appeared to be a 'collaboration of minds' intelligent enough to control the events of the time, but 'little enough' to feel that they 'had to collaborate' because the facts 'may not have been strong enough', or 'evidence that was collected under suspect conditions, dismissed because of contamination' and may have required manipulation by design." Nevertheless, the letter continues, "Jaimi, remember that this is just a personal hypothesis now. I have no proof of this in your case." Therefore, Gold has no personal knowledge of any evidence. Rather, Gold offers a hypothesis, unverified and conclusory. Gold's hypothesis, unsupported by facts or evidence, will not support a petition for post-conviction relief.

Finally, Crabtree testifies that Wright, a janitor at the Jerome County Courthouse, knew of evidence that would have cleared Charboneau, but "he was told to keep his mouth shut about it and the prosecution withheld it from the courts." Crabtree called the Wright household, but Mrs. Wright "became very—almost rude and said no [Wright is] at work—but we don't want to be involved in that, just leave us alone." Without physical evidence or a sworn statement, the information allegedly known by Wright is unsubstantiated and inadmissible, and cannot support a petition for post-conviction relief.

Charboneau supports his petition with other admissible affidavits, but these affidavits do not contain exculpatory information that would justify an evidentiary hearing or relief from his conviction. For instance, Carlos Powell testified that he was aware that the deceased shot Charboneau on a previous occasion. Carmon Shannon "got to know both Jaimi and Marilyn from the times they would stop in at 'Grass Mare,' a combination gas station and café ... I remember seeing Jaimi and Marilyn in early June 1984 when they had stopped ... for gas. On that occasion they were driving an older model, red Ford pickup." Additionally, Charboneau's aunt and uncle testified essentially that Charboneau and the deceased were at their house a few nights prior to the shooting and "they were getting along fine" and were happy together.

Therefore, I dissent from the majority opinion because the district court properly dismissed Charboneau's petition. The evidence presented by Charboneau was either inadmissible hearsay, unsubstantiated, conclusory or did not contain any exculpatory information or evidence sufficient to justify either an evidentiary hearing or relief from Charboneau's conviction. Because there was no justification for an evidentiary hearing and no legal basis for relief from the conviction, the petition is frivolous.

B. The District Court Committed Harmless Error When It Failed To Rule On The Motion For Appointment of Counsel.

Although the district court erred in failing to rule on Charboneau's Motion for Appoint-

ment of Counsel prior to deciding the case on the merits, the error is harmless. "An application for post-conviction relief is processed under the Idaho Rules of Civil Procedure," *Downing v. State,* 132 Idaho 861, 864, 979 P.2d 1219, 1222 (Ct.App.1999). Harmless error is defined as "any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R.C.P. 61. Charboneau's petition failed to provide the court with a sufficient basis to require an evidentiary hearing or grant post conviction relief, and the petition is frivolous. An indigent person is not entitled to appointed counsel if his petition for post-conviction relief is frivolous. I.C. § 19–852(b)(3). Charboneau's substantial rights have not been violated by the district court's failure to appoint counsel because he did not have a right to appointed counsel. As such, I dissent from the majority opinion because the district court's failure to rule on Charboneau's Motion to Appoint Counsel was harmless.

Chief Justice SCHROEDER concurs.