## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 35855

RAYMOND J. MELTON,

    Petitioner-Appellant,

v.

STATE OF IDAHO,

    Respondent.

)
)
)
)
)
)
)
)
)

Boise, November 2009

2009 Opinion No. 148

Filed: December 9, 2009

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Hon. Barry Wood, District Judge.

District court order dismissing successive petitions for post-conviction relief, affirmed.

Molly Huskey, State Appellate Public Defender, Boise, for appellant. Eric R. Lehtinen, Deputy State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Kenneth K. Jorgensen, Deputy Attorney General argued.

---

BURDICK, Justice

Raymond J. Melton appeals from the order of the district court summarily dismissing his successive petition for post-conviction relief. Melton contends that the district court erred in failing to grant, or even rule upon, his motion for appointment of counsel, and that the court erred in summarily dismissing his successive petition. He argues that these errors necessitate a remand of his case to the district court for appointment of counsel and an evidentiary hearing on his claims. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Melton appeals from the district court's summary dismissal of his successive petition for post-conviction relief. In 2003, Melton was convicted and sentenced for lewd conduct with a child under the age of sixteen. His sentence was affirmed in an unpublished decision by the Idaho Court of Appeals in 2004. Melton then filed a petition for post-conviction relief, raising

1

several issues, including prosecutorial misconduct based upon his allegation that "the prosecutor showed unfairness by instructing petitioner's daughter on what exactly to say and how to say it, which violated due process." Melton's petition was denied following an evidentiary hearing. Melton filed a Notice of Appeal on February 9, 2005, and the State Appellate Public Defender (SAPD) was appointed to represent Melton in that appeal. The SAPD moved to withdraw from its representation of Melton, having found no non-frivolous issues to present on appeal. The Idaho Supreme Court granted the motion to withdraw on November 2, 2005, and, on January 25, 2006, the Supreme Court dismissed Melton's appeal.

Melton filed his successive petition for post-conviction relief on April 24, 2006, alleging that his post-conviction counsel in the previous proceeding failed to properly apprise the district court of the claims intended to be asserted or to present the evidence necessary to prove those claims. The district court summarily dismissed his successive petition on July 21, 2006. Melton timely appealed. The Idaho Court of Appeals, in an unpublished opinion, affirmed the district court. This court granted Melton's petition for review.

## II. ANALYSIS

### A. Standard of Review

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Oliver,* 144 Idaho 722, 724, 170 P.3d 387, 389 (2007). An application for post-conviction relief under the Uniform Post Conviction Procedure Act (UPCPA) is civil in nature. *Workman v. State*, 144 Idaho 518, 522, 164 P.3d 798, 802 (2007). The applicant for post-conviction relief must prove by a preponderance of evidence the allegations upon which the application for post-conviction relief is based. *Id*. Unlike the complaint in an ordinary civil action, however, an application for post-conviction relief must contain more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). *Id*. Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant. *Id*. "The application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal." *State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008).

### B. The district court erred in failing to consider Melton's motion for appointment of counsel, but that error did not affect Melton's substantial rights.

Melton asserts that the district court erred in failing to consider, and grant, his motion for appointment of counsel in the successive post-conviction relief proceedings because Melton could not "be expected to know how to properly allege the necessary facts" and would have benefited from the assistance of counsel. Furthermore, Melton contends that the court abused its discretion in failing to grant his motion for appointment of counsel because his successive petition raised the possibility of a valid claim. We find that the district court erred in failing to address Melton's motion for appointment of counsel, but that error did not affect Melton's substantial rights.

Idaho Code § 19-4904 states that "[i]f the applicant is unable to pay court costs and expenses of representation . . . a court-appointed attorney may be made available to the applicant in the preparation of the application." The decision to grant or deny a request for a court-appointed attorney lies within the discretion of the district court. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). However, "[a]t a minimum, the trial court must carefully consider the request for counsel, before reaching a decision on the substantive merits of the petition." *Id*. at 794, 102 P.3d at 1113. "For the purposes of I.C. 19-4904, the trial court should determine if the petitioner is able to afford counsel and whether this is a situation in which counsel should be appointed to assist the petitioner." *Id*. at 793, 102 P.3d at 1112. In *Charboneau*, we held that the court should have first determined whether Charboneau was entitled to court-appointed counsel before denying his petition for post-conviction relief on its merits: "By not specifically addressing the appointment of counsel issue before dealing with the substantive issues of [the petition], the district court abused its discretion." *Id*.

Here, we find that the district court erred in not specifically addressing Melton's motion for appointment of counsel before it addressed the substantive merits of his petition. However, we find that such error did not affect Melton's substantial rights because Melton's successive petition for post-conviction relief did not raise the possibility of a valid claim.

"[T]he proper standard for determining whether to appoint counsel for an indigent petitioner in a post-conviction proceeding is whether the petition alleges facts showing the possibility of a valid claim that would require further investigation on the defendant's behalf." *Workman v. State*, 144 Idaho 518, 529, 164 P.3d 798, 809 (2007). In determining whether the appointment of counsel would be appropriate, "every inference must run in the petitioner's favor where the petitioner is unrepresented at that time and cannot be expected to know how to

3

properly allege the necessary facts." *Charboneau*, 140 Idaho at 794, 102 P.3d at 1113. This Court recently addressed in greater detail the standard for considering a motion for appointment of counsel:

> When considering a motion for appointment of counsel, the trial court must do more than determine whether the petition alleges a valid claim. The court must also consider whether circumstances prevent the petitioner from making a more thorough investigation into the facts. An indigent defendant who is incarcerated in the penitentiary would almost certainly be unable to conduct an investigation into facts not already contained in the court record. Likewise, a *pro se* petitioner may be unable to present sufficient facts showing that his or her counsel's performance was deficient or that such deficiency prejudiced the defense. That showing will often require the assistance of someone trained in the law. Therefore, the trial court should appoint counsel if the petition alleges facts showing the possibility of a valid claim such that a reasonable person with adequate means would be willing to retain counsel to conduct a further investigation into the claim. The investigation by counsel may not produce evidence sufficient to survive a motion to dismiss. But, the decision to appoint counsel and the decision on the merits of the petition if counsel is appointed are controlled by two different standards.

*Swader v. State*, 143 Idaho 651, 654-55, 152 P.3d 12, 15-16 (2007). Thus, in determining whether Melton raised the possibility of a valid claim, we consider whether the appointment of counsel would have assisted him in conducting an investigation into facts not in the record and whether a reasonable person with adequate means would have been willing to retain counsel to conduct that further investigation into the claim.

If Melton did not raise the possibility of a valid claim, the district court's error did not affect his substantial rights. Idaho Rule of Civil Procedure 61 counsels: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

When addressing the issue of appointment of counsel in post-conviction proceedings, this Court examines whether the possibility of a valid claim exists before determining that an error in failing to appoint counsel requires remand. In *Swader*, the Court held that appointment of counsel was warranted where the petitioner alleged that the jailor had made certain comments to her indicating that he may have spoken to his wife, who was a juror, and also alleged that pill packages that had not been introduced into evidence were permitted to sit in front of the jury during the trial. 143 Idaho at 654, 152 P.3d at 15. This Court found that a reasonable person with adequate means would be willing to retain counsel to investigate both allegations. *Id.*

4

Similarly, in *Charboneau*, although the Court used strong language about the district court abusing its discretion by not addressing the appointment of counsel issue, that discussion followed a determination that the petitioner's claims raised the possibility of a valid claim. *Charboneau v. State,* 140 Idaho 789, 793, 102 P.3d 1108, 1112 (2004). In contrast, in *Swisher v. State*, 129 Idaho 467, 926 P.2d 1314 (Ct. App. 1996), and *Judd v. State*, ___Idaho ___, 218 P.3d 1 (Ct. App. 2009), the Idaho Court of Appeals did not remand on the basis of failure to appoint counsel because the Court of Appeals found that the petitioners had not raised the possibility of a valid claim and thus their substantial rights were not affected.

We find that, even with every inference running in his favor, Melton's successive petition for post-conviction relief did not raise the possibility of a valid claim such that a reasonable person with adequate means would be willing to retain counsel to investigate. First, the grounds upon which Melton based his successive application for post-conviction relief was "[i]neffecive [sic] counsel—my attorney . . . fail [sic] to submit any evidence or lagimate [sic] argument at my evidentiary hearing." He further explained that his attorney had "[f]ailed to call key witnesses" and "[f]ailed to present evidence." To support these allegations, Melton submitted two letters allegedly written by the victim, C.M., and further alleged the following: (1) post-conviction counsel received letters from potential witnesses expressing their willingness to testify and disclosing their anticipated testimony; (2) C.M.'s mother was willing to testify that her daughter was told by the prosecutor what to say on the witness stand and she had been threatened with the loss of her children if she testified on Melton's behalf; (3) post-conviction counsel was informed that C.M. was willing to testify that the State had forced her to give a false report and perjure herself at Melton's preliminary hearing; and (4) Melton specifically asked his post-conviction counsel to call C.M., C.M.'s mother, the service coordinator, the investigating officer, and the prosecutor to testify at the evidentiary hearing, as all of them could have corroborated Melton's allegations about the State's coercion and coaching of C.M. Thus, Melton claims that his counsel was ineffective in failing to present evidence supporting Melton's allegations that the State coerced and coached C.M. to testify as she did.

This issue was addressed in Melton's prior post-conviction relief proceeding, where he alleged prosecutorial misconduct because "the prosecutor showed unfairness by instructing petitioner's daughter on what exactly to say and how to say it, which violated due process." At

the evidentiary hearing on Melton's first petition for post-conviction relief, the district court questioned Melton about this issue:

Q. You also allege, in your petition, prosecutorial misconduct.

A. Yes, sir.

Q. Did you discuss that with your attorney?

A. Yes, sir, I did.

Q. And what did you discuss with him?

A. It was on the day that we had preliminary hearing . . . . My daughter got off the stand at the recess, ran to her mother, crying. Mr. Brown, Officer Geer and Mrs. Moon went over and pulled my daughter away from her mother, and sat her in the chair that the prosecuting attorney is now sitting in.

The prosecuting attorney turned and had his hands on the chair facing my daughter, saying to my daughter, when my daughter said "I do not want to do this," "You have got to do this. You have got to tell the judge where your daddy put his penis at."

That is a violation of Code 19-24A subsection (b) that says instruction, the support witness, outside the presence of a jury, that he is not to coach, clue or in any way inform or attempt to inform the witness of a minor child.

. . . .

Q. Your allegation of the prosecutorial misconduct is that the prosecutor was coaching the witness?

A. Also, was Officer Geer and Mrs. Moon. And later on, they put—Mrs. Moon appeared to sit by my daughter to enforce her, force testimony against me, sir.

Melton's sister, Linda Mahnke, testified to similar facts regarding C.M. taking a break and saying she didn't want to continue testifying and C.M. then being told that she needed to tell the judge what had happened.

During questioning at the evidentiary hearing on whether Melton knowingly and voluntarily pled guilty, Melton only testified that C.M. misrepresented the facts that he had placed her on the bed instead of throwing her on the bed and he had not choked her mother. During the questioning, Melton also admitted that he had anal-to-genital contact with C.M.:

Q. And Judge Melanson asked you: "Under the age of 16, of the age of 10, by genital-to-anal contact with the intent to arouse, appeal, and/or gratify the lust, passions or sexual desires of you, the defendant?" And you answered?

A. "Yes, sir."

Q. Okay, now, did you understand what you were saying then?

A. To a certain point, yes. I was—

6

Q. And was that the truth?

A. Yes, sir. But I didn't mean to do harm or I didn't mean to penetrate, or any of the other deals.

Q. Okay. But you did admit that you were guilty on that day of a sex crime?

A. Of a sex crime, yes, I admit I'm guilty of a sex crime. I'm admitting, right now, guilty of sexual abuse, not lewd and lascivious conduct.

Q. So are you admitting today that you had anal-to-genital contact with your daughter?

A. Yes, I admit that I had anal contact with my daughter.

. . . .

Q. And you stated earlier that you wanted to go and do the change of plea, because you wanted to nip this in the bud?

A. I wanted to not put my daughter up here and have you forcibly make her testify against me like you did before, sir.

Q. Okay, and you were there. You heard her say that you had touched her on her rectum—or I think the quote was on her butt with your penis?

A. Yes, I did.

Q. She told the truth, didn't she?

A. Yes, she did.

Q. You didn't want to put her through that any more, did you?

A. No, I didn't, sir. And I didn't want to put her through the stuff that you were telling her to say.

Q. Which was to tell the truth?

A. Which was forcefully to get her to testify against her will.

Q. Did she lie on the stand?

A. Yes, sir.

Q. How did she lie on the stand, Mr. Melton?

A. When she was doing her last statement in the courtroom when she said that she seen me choke her brother. I have never—Or choke her mother. I have never choked her mother or hurt her mother in any way.

Q. That was during the sentencing part?

A. Yes.

Q. And did I tell her to lie on the stand?

7

A. It was a letter that she didn't write, from what I understand.[1]

Q. Okay, so that's when she lied. She didn't come in here and testify at sentencing, did she?

A. I did not try to stick it up her butt like you guys told me. I rubbed it up against her crack of her butt. I didn't put it up the part where she takes a s--- at. Excuse my way of putting that, sir.

Q. She didn't come into the courtroom and lie, as you previously have stated?

A. Well, that I threw her on the bed, yes, that was a lie. I did not throw my daughter on the bed. I sat her on the bed.

Based upon Melton's own testimony at the evidentiary hearing on his prior petition for post-conviction relief, we find that Melton's substantial rights have not been affected. Even with every inference running in Melton's favor, he has not raised the possibility of a valid claim. If his counsel had produced letters and witnesses in the prior post-conviction proceeding supporting Melton's claim that C.M. had been coerced and coached by the State, it would not have changed Melton's own testimony that: (1) C.M. only lied about him throwing her on the bed, and (2) he had anal-to-genital contact with her. Therefore, Melton does not raise the possibility of a valid claim and the district court's error in not appointing counsel did not affect Melton's substantial rights.

## C. The district court did not err in dismissing Melton's successive petition for post-conviction relief.

Melton further argues that, because he raised a genuine issue of material fact as to the ineffective assistance of his post-conviction counsel, the district court erred in summarily dismissing his successive petition for failing to meet his burden in this regard. Because the burden here is greater than "possibility of a valid claim" discussed above, we find that the district court did not err in summarily dismissing Melton's successive petition for post-conviction relief based upon the grounds laid out above. The alleged facts here, even with every inference running in Melton's favor, would not entitle Melton to relief. Therefore, we hold that the district court did not err in dismissing Melton's successive petition without holding an evidentiary hearing.

---

[1] Melton is referring to the letter read by C.M. during the sentencing phase of the initial proceedings.

## III. CONCLUSION

We hold that, although the district court erred in not considering Melton's motion for appointment of counsel, that error did not affect a substantial right because Melton did not raise the possibility of a valid claim in his successive petition for post-conviction relief. We therefore affirm the district court's summary dismissal of Melton's successive petition for post-conviction relief.

Justices J. JONES, W. JONES, HORTON and KIDWELL, Pro Tem, **CONCUR.**