**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49245**

| | |
|---|---|
| ADAM DAVID BODENBACH,<br><br>    Petitioner-Appellant,<br><br>v.<br><br>STATE OF IDAHO,<br><br>    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

)  **Filed:  November 22, 2022**

)  **Melanie Gagnepain, Clerk**

)  **THIS IS AN UNPUBLISHED**
)  **OPINION AND SHALL NOT**
)  **BE CITED AS AUTHORITY**

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Steven J. Hippler, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Adam David Bodenbach appeals from the district court's summary dismissal of his petition for post-conviction relief.  Bodenbach contends the court erred in dismissing his claim of ineffective assistance of counsel for failing to hire an expert witness toxicologist.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2017, Bodenbach shot and killed Ryan Banks.  The State charged Bodenbach with first degree murder, the commission of a crime with a firearm, and possession of cocaine. The following evidence was elicited during the jury trial.

The night began with Bodenbach and a friend, Kimsey, injecting cocaine between 8:00 p.m. and 10:00 p.m.  Eventually Banks joined them to hang out.  Bodenbach and Kimsey began to argue about Bodenbach borrowing Kimsey's car.  The argument escalated with Kimsey pushing Bodenbach; Banks intervened by pushing Bodenbach backwards into Bodenbach's room and

pinning him on his bed. Bodenbach testified that Banks' hands were around his throat and choking him. Kimsey pulled Banks off Bodenbach, and Kimsey and Banks walked to Banks' apartment. Kimsey stayed with Banks for a while and then went back to check on Bodenbach. Kimsey found Bodenbach in his room tearing his room apart by flipping the mattress and throwing clothes around while trying to find his handgun. Bodenbach accused Banks of stealing his handgun. Kimsey returned to Banks' apartment, giving Bodenbach time to calm down. Bodenbach eventually found his handgun in his bedroom. Bodenbach testified he was worried Banks may harm Kimsey so he walked to Banks' apartment with his handgun to check on Kimsey.

Here Kimsey's and Bodenbach's stories diverge. Bodenbach testified he knocked on Banks' door and announced himself as police; Bodenbach announced police because he was concerned how Banks may react. Bodenbach testified his handgun was in his jacket pocket at this time. Kimsey testified he did not hear a knock at the door; instead, Kimsey and Banks began to leave the apartment to smoke when Banks paused at the front door. Kimsey walked through the door and saw Bodenbach pointing his handgun in their direction. Kimsey testified he heard Bodenbach say, "You thought I was fucking kidding. You think I'm a fucking punk."

Banks said nothing but lunged towards Bodenbach. Bodenbach testified that Banks pulled a knife out of his waistband prior to lunging toward Bodenbach. Banks pushed Bodenbach into a pillar. From his angle, Kimsey could not see the front of Banks or Bodenbach's handgun. Bodenbach claimed Banks had the knife about six inches away from his torso when he pulled his handgun out and pulled the trigger. Bodenbach shot Banks shortly after midnight.

Kimsey testified he did not see a knife on Banks at any time that night. However, during his interview with law enforcement the night of Banks' death, Kimsey reported Banks had been carrying a knife before he was shot.

Immediately after the shooting, Bodenbach went back to his apartment, called 911, and reported he shot someone. Bodenbach placed his handgun on a table in his apartment and then purportedly took four milligrams of Xanax to calm down.

The Boise Police Department responded to the scene. Officers encountered Bodenbach talking on the phone and holding a knife, which he later claimed he found on the ground near where he shot Banks. Bodenbach was arrested and subsequently transported to the hospital due to complaints of neck and back pain. Around 2:00 a.m., Boise Police Detective Pietrzak interviewed

Bodenbach at the hospital. Bodenbach later alleged he did not remember being interrogated by Detective Pietrzak.

In response to Bodenbach's testimony that he consumed cocaine and Xanax, the State called expert witness Dr. Gary Dawson. Dr. Dawson consults in pharmacology and the sub-discipline toxicology. Dr. Dawson testified to the effects of cocaine and opined that cocaine provides an instantaneous high that lasts a relatively short period--typically an hour or less with an hour and a half being the maximum. Dr. Dawson then testified about Xanax, dosage, and common effects. Dr. Dawson opined that four milligrams is a huge dose for someone who does not regularly take Xanax and that he would expect to see that person become unresponsive and sedated for possibly twelve to fourteen hours. Based upon his training and experience, and the accounts from eyewitnesses, Dr. Dawson did not believe Bodenbach was under the influence of Xanax after the shooting with a reasonable degree of medical certainty.

The jury found Bodenbach guilty on all counts. Bodenbach timely petitioned for post-conviction relief. He raised six claims of ineffective assistance of counsel; one of which alleged trial counsel was ineffective for failing to consult with and present testimony of a toxicologist to rebut the State's expert witness. Bodenbach provided his own affidavit that stated he told trial counsel he took four milligrams of Xanax after the shooting, causing him to have no memory of his statements to law enforcement, and he asked trial counsel to investigate the issue and acquire a toxicologist or pharmacologist to confirm Bodenbach's account. Bodenbach also provided the declaration of Dr. Loring Beals. Dr. Beals is a consulting forensic toxicologist. Dr. Beals' declaration opined that chronic cocaine abusers "exhibit a prolonged half-life of about 4 hours (versus 1 hour in the naïve user)." He explained common adverse side effects of cocaine usage. Dr. Beals also reported the consumption of Xanax would have moderated Bodenbach's affect attributable to the cocaine use.

The State answered and filed a motion for summary dismissal. The district court provided notice of intent to dismiss with a thorough analysis of the petition. The district court provided twenty days for Bodenbach to respond. Bodenbach did not file a response. The district court entered an order of dismissal and Bodenbach now timely appeals.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. Idaho Code § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

4

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the state does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

### III.

### ANALYSIS

Bodenbach alleges his trial counsel was ineffective for failing to hire a toxicologist to testify regarding Bodenbach's consumption of cocaine and Xanax. The State responds that Bodenbach has failed to demonstrate a genuine issue of material fact regarding the claim of ineffective assistance of counsel.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show

that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

"The decision of what witnesses to call 'is an area where we will not second guess counsel without evidence of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation.'" *State v. Payne*, 146 Idaho 548, 563, 199 P.3d 123, 138 (2008) (quoting *State v. Larkin*, 102 Idaho 231, 234, 628 P.2d 1065, 1068 (1981)). We recognize that a defendant's lawyer does not always have a duty to consult experts when the government is proposing to put on expert witnesses. *Murphy v. State*, 143 Idaho 139, 146, 139 P.3d 741, 748 (Ct. App. 2006). "There may be no reason to question the validity of the government's proposed evidence or the evidence may be so weak that it can be demolished on cross-examination." *Id.* (quoting *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir.2001)).

Bodenbach argues trial counsel was deficient for failing to provide testimony from a toxicologist and that if trial counsel had proffered an expert witness to refute the State's evidence, there is a reasonable probability that the result of the trial would have been different. Bodenbach reports he consumed two substances the night of the murder: cocaine and Xanax. First, Bodenbach alleges his cocaine consumption prior to the shooting inhibited his ability to form malice aforethought and that Dr. Beals' declaration shows an expert witness could support this theory. Second, Bodenbach maintains he consumed Xanax after the shooting and Dr. Beals' declaration shows an expert witness would have supported his testimony, which would have bolstered his credibility.

6

A. **Cocaine Testimony**

The district court found that Bodenbach failed to establish a genuine issue of material fact that his trial counsel was ineffective. The district court's primary focus was on Bodenbach's allegation that trial counsel was ineffective for failing to retain expert testimony for the suppression hearing.[1] The district court found that Bodenbach testified he used cocaine between 9:00 p.m.[2] and 10:00 p.m. and the effects had worn off by 11:30 p.m., hours prior to his *Miranda*[3] waiver. Consequently, the district court found the record did not support Dr. Beals' opinion that Bodenbach was impaired by cocaine during his time at the hospital.

Now on appeal, Bodenbach focuses his attention on how a toxicologist could have rebutted the State's case during trial rather than the suppression hearing. Bodenbach argues a toxicologist could have shown that Bodenbach was under the influence of cocaine at the time of the shooting and that the Xanax mitigated the signs of cocaine use after the shooting.

The State contends Bodenbach has failed to show a genuine issue of material fact that his trial counsel was ineffective during trial. The State asserts that trial counsel's strategy was self-defense and calling an expert witness to opine Bodenbach's cocaine consumption rendered him unable to form malice aforethought would conflict with Bodenbach's assertion that he reasonably defended himself from imminent danger of death or great bodily harm.

In this case, Bodenbach has failed to show a genuine issue of material fact as to whether a toxicologist would have assisted in demonstrating that Bodenbach was under the influence of cocaine at the time of the shooting. Dr. Beals' affidavit explains that a chronic cocaine user exhibits "a prolonged half-life of about 4 hours (versus 1 hour in the naïve user)."[4] However, Bodenbach testified about his personal experience with cocaine, which is contrary to Dr. Beals' declaration. Bodenbach testified that: he has a chronic addiction to cocaine; he used cocaine

---

[1] The suppression hearing focused on whether Bodenbach involuntarily waived his *Miranda v. Arizona*, 384 U.S. 436 (1966) rights due to intoxication.

[2] The district court derived its background from the district court's suppression order. At trial, Bodenbach testified he used cocaine between 8:00 p.m. and 10:00 p.m.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] Beals also concludes that Bodenbach's behaviors "represented drug induced central nervous system impairment clouding his judgment, but not exhibiting malice aforethought." This is an ultimate conclusion that is beyond the scope of an expert witness, and the district court rightly disregarded it.

between 8:00 p.m. and 10:00 p.m.; cocaine typically affects him for about forty-five minutes with a pretty fast drop-off; he felt the effects of the cocaine "maybe a little bit" during his argument with Kimsey and Banks; and that after he found his handgun, he stayed in his apartment for about thirty to forty-five minutes before going to Banks' apartment. Bodenbach's own testimony shows he was not under the influence of cocaine during the shooting at midnight. Thus, Dr. Beals' generalized statement about chronic cocaine users is not supported by the evidence and is inapplicable to Bodenbach's case.

Not only is Dr. Beals' declaration deficient, Bodenbach has failed to show a genuine issue of material fact as to whether his trial counsel was ineffective. It was objectively reasonable for trial counsel to not proffer an expert witness about the effects of cocaine use during the time of the shooting when Bodenbach's own testimony denies the influence of cocaine. Bodenbach's chosen defense at trial of self-defense was reasonable and, while Bodenbach now argues that the lack of malice aforethought could have been an alternative defense, as noted, it is undercut by his own testimony and, moreover, fails to demonstrate that trial counsel's trial strategy was unreasonable. There is no showing of prejudice for the same reason. As a result, Dr. Beals' declaration does not create a genuine issue of material fact that trial counsel was inefficient.

**B.     Xanax Testimony**

The district court found Dr. Beals' opinion about Bodenbach's ingestion of Xanax did not have any rebuttal value. Dr. Beals never opined that Bodenbach's behavior was consistent with Xanax use but instead accepted Bodenbach's testimony that he consumed Xanax as fact.

Bodenbach contends that proving he took Xanax was important to explain why he was not displaying effects of cocaine after the shooting, since Xanax would have mitigated the cocaine use. Next, Bodenbach asserts credibility was incredibly important for Bodenbach's claim of self-defense. The jury may not have believed Bodenbach's claim that Banks had a knife when Dr. Dawson undermined Bodenbach's credibility about taking Xanax. In essence, Dr. Dawson allegedly harmed Bodenbach's credibility to the jury. As such, Bodenbach argues expert testimony was necessary to help prove his claim that he took Xanax, which would have bolstered his credibility.

Dr. Beals' declaration first discusses Bodenbach's Xanax use--saying he seemed familiar with the drug and its effects and appears to have been a frequent user. Dr. Beals explains Xanax has a relatively long half-life and then subsequently accuses law enforcement of discontinuing a

drug screening which would have proven Bodenbach's Xanax claim and discusses proper hospital protocol. The district court aptly noted, not only was this a false allegation against law enforcement that was disproved during trial, Dr. Beals' opining about hospital protocol and what a doctor should have administered is beyond his expertise and the scope of his testimony. The only other time Dr. Beals discussed Xanax is at the end of his declaration, "Some of the adverse effects attributable to cocaine abuse prior to the shooting would have been mitigated by the taking, *by his own statement*, of Xanax just minutes after the incident, thus moderating his affect." (Emphasis added).

Bodenbach has failed to show through Dr. Beals' declaration that trial counsel was ineffective. As both the district court and the State note, Dr. Beals' discussion of Xanax conclusively accepts that Bodenbach consumed Xanax immediately after the shooting. Bodenbach argues Dr. Beals is allowed to do this because it was in evidence that Bodenbach consumed Xanax via his own testimony. While true, Dr. Beals does not contradict or challenge Dr. Dawson's opining about the effects of Xanax; what symptoms he would expect to see from four milligrams; and how the facts in evidence about Bodenbach's affect and behavior do not suggest Xanax consumption. If a fact finder did not believe Bodenbach's testimony that he took Xanax, then Dr. Beals' comments are meaningless. Dr. Beals does not bolster Bodenbach's testimony as purported; Dr. Beals relies upon Bodenbach. As a result, Bodenbach has failed to show a genuine issue of material fact that trial counsel was ineffective because Dr. Beals' declaration has no rebuttal value.

## IV.
## CONCLUSION

Bodenbach has failed to show a genuine issue of material fact that trial counsel was ineffective for not hiring an expert witness toxicologist. The district court did not err in summarily dismissing Bodenbach's petition for post-conviction relief. Accordingly, we affirm the judgment.

Judge HUSKEY and Judge BRAILSFORD **CONCUR**.